Congregational Society of Halifax *v.* Stark et al.

---

CONGREGATIONAL SOCIETY OF HALIFAX *v.* JAMES L. STARK, *et al.*

*Corporation. Deed. Construction. Church.*

A deed to a corporation aggregate will convey a fee though the word "successors " is not used.

When the *habendum* clause in a deed is contradictory to the premises, it is void, but when it simply explains, limits or qualifies the premises, it performs its proper office.

A deed in the premises simply described the land by its boundaries. The habendum was "during the time the said society or their heirs shall meet on said land for public worship or have a meeting house standing on said land, and appropriate the use of the same to Congregational or Presbyterian public worship, *held* that when the grantees or their successors ceased to use the land for the purposes specified, it reverted to the grantor and his heirs.

Congregational Society of Halifax *v.* Stark et al.

When it appeared that the original society, as such, had removed to another place, and ceased to meet on the land for public worship, but a minority of its members continued to meet there under a new organization and name, *held* that this removal operated as a forfeiture of the rights of the society under the first clause of the *habendum*, but that under the second clause of the habendum neither the original society nor one claiming under them, or by authority from them, would forfeit their right to the land so long as they or either of them should continue to keep a meeting house on said land and appropriate the use of the same to Congregational or Presbyterian public worship.

A forfeiture of the land under such circumstances, would not work a forfeiture of a stove put into the meeting house by the society.

This was an action of trespass brought by the plaintiffs against the defendants for forcibly breaking open and entering their meeting house, situate in Halifax, breaking the doors and locks attached to the same, and carrying away and converting to their own use a stove and pipe belonging to the plaintiffs, situate therein. To this, the defendants pleaded, first, not guilty—issue to the country.

Second. That there was no such corporation—verification.

Third. That said meeting house was the property of the defendant Stark, that he entered of his own right, and Barton as his servant—verification.

Fourth. That the close wherein the said meeting house is situate and appurtenant is the close, soil and freehold of the said Stark, that he was the owner of the house, stove and pipe, and entered with Barton as his servant—verification.

Fifth. That the close wherein said meeting house is situate and is appurtenant, was the close, soil and freehold of the estate of William McCrillis ; that before the committing of the said trespasses, one Leonard Brown was appointed the administrator of McCrillis' estate, and that said trespasses were committed by the license of said Brown as administrator—verification.

The plaintiffs replied to the first plea similiter.

To the second that the plaintiffs were a corporation, organized according to chapter 81 of the Revised Statutes—verification.

To the third, that said meeting house was not the property of said Stark, and issue to the country.

To the fourth, that said close, soil and freehold, and said meet-

ing house, stove and pipe, were not the property of said Stark, and issue to the country.

To the fifth, that said close, soil and freehold, and meeting house, stove and pipe were not the close, soil, and freehold and property of said McCrillis' estate, and issue to the country.

Rejoinder to the second replication to the country—to the third, fourth and fifth pleas similiter.

The plaintiffs introduced testimony tending to prove, that as far back as the memory of man, there had been a Congregational Church and Society in Halifax, which had built and *occupied* the meeting house in question as a place of worship, and owned and controlled the house ; that the stove and pipe taken had been bought and placed in the house about thirty years ago by said society, and used by them for the purpose of warming the same, and had never been moved therefrom since they were first placed therein.

They also introduced testimony tending to prove that about the first of September, 1844, a majority of the society and church moved about two miles west from the place where the meeting house in question stood, which was called and known as the " Centre of Halifax" to a place called " Plumb Hollow," in said town, took with them the minister, communion service, pulpit, bible, and occupied a new meeting house that they had erected there, or which had been erected under their direction, and have continued to meet and occupy the same as a place of public worship until the present time :

That a considerable minority of said church and society who were members thereof at that time, refused to remove with the majority to " Plumb Hollow," aforesaid, but chose to remain and meet in the old place at the " Centre," and on the 26th of September, 1844, formed a new society, and called it the " Centre Congregational Society of Halifax," pursuant to chapter 81 of the Revised Statutes, have continued their organization as a corporation up to the present time, and are the plaintiffs in the present action.

The plaintiffs also put in evidence tending to show, that in November, 1844, the minority of the old church who had remained at the " Centre," and continued to worship, more or less

at the old house, having requested the majority to consent to their being organized into a new church, and they having refused so to consent, a mutual "Ecclesiastical Council" was called by both parties, to meet in Halifax on November 19, 1844, for the purpose of considering the difficulties existing in said church, and to form a new church if deemed expedient ; that said council met, heard the parties, decided that in their opinion the majority who had removed to the " Hollow" would be the original church and society in case of division, and appointed a committee of four members of the council, in case an amicable arrangement could not be effected, to have discretionary power with reference to " future action ;" that said " committee of council" in pursuance of said " discretionary power," afterwards on the 26th day of December, 1844, constituted the said minority a Congregational Church, according to the rules of that denomination :

That on the 21st of December, 1844, the parties, majority and minority of the old society, agreed to refer the question of property owned by the original society to the committee of council aforesaid as referees, who met at that time and after hearing the parties awarded the meeting house, the land on which it stood, and the stove and pipe to the " Centre Congregational Society," the present plaintiffs, who were at that time worshipping in the old meeting house, and have ever since occupied and been in possession of the said house, stove and pipe, in the manner hereinafter stated, and were so in December, 1858, when the stove and pipe was taken and carried off by the defendants ; that the stove and pipe were the same that were purchased by the original society and placed in the house by them ; that the majority have never since that award occupied the house, used the stove, or claimed any right to the same ; that about the 20th day of December, 1858, the defendants broke open the meeting house, and carried off the stove and pipe as alleged in the declaration ; that the damage to the door and lock was about two dollars, and the value of the stove and pipe about eighteen dollars.

The plaintiffs further gave evidence tending to show that a new church was constituted on the 26th of December, A. D., 1844 ; that this new church was composed of members of the old church, who refused to remove with the majority to Plumb Hol-

low, and that the members of said new church continued to occupy the meeting house in controversy for the purposes of public worship until about three years before the commencement of this suit. And it appeared by cross-examination of the plaintiffs' witnesses, (and about this point there was no controversy,) that no meeting for public worship had been held in the meeting house in controversy for a space of nearly three years previous to the commencement of this suit, and that but one religious meeting had been held therein for a period of nearly four years, and that there was not at the commencement of this suit a single male member of the Presbyterian or Congregational church resident in Halifax, who did not belong to the church now worshipping at West Halifax, but the plaintiff's evidence did tend to show that there were now living in Halifax six or eight females who belong to the new church organized in December, 1844, as hereinbefore stated.

The plaintiff further gave evidence tending to show, that there had been in the month of December, 1844, a reference or arbitration agreed upon by the old and new churches or societies, by which all differences pertaining to questions growing out of church property were to be settled, but there was no evidence given tending to show that the majority who removed to West Halifax, by vote of the society, ever authorized any submission or reference.

The plaintiffs then gave evidence bearing upon the question of damages, and rested their case.

The defendants then gave in evidence an office copy of a deed recited below, from William McCrillis to Halifax Society dated July 6th, 1782, and it was conceded that the meeting house in controversy stands upon the lands conveyed by said deed :

The records of the Congregational church and society of Halifax, and evidence of the proceedings of an ecclesiastical council convened at said Halifax, November 19th, 1844 ; also certain deeds of the premises in question from the heirs of William McCrillis to the defendant Stark.

At this stage of the case the counsel desired an intimation from the court in regard to the law governing the case, whereupon the court, REDFIELD, Ch. J., presiding, at September term, 1860, *pro forma* ruled that the heirs of McCrillis, the original grantor

of the land on which the house stood, had a reversionary interest in the land, which passed to the defendant Stark by their deeds ; that the plaintiffs are not in any legal sense the successors of the grantees in the deed of McCrillis ; that consequently the house ceased to be occupied for the purposes specified in the deed when the old society erected a new house for public worship and removed to another part of the town, and that after so great a lapse of time it was competent for the defendants to enter the house and remove the stove and pipe in the manner the testimony tended to show. Whereupon a verdict passed for the defendants, and exceptions are allowed and execution stayed.

### THE MC CRILLIS DEED.

HALIFAX, August ye 9th, 1790.

*Know all Men by these Presents* That I William Mc Crillis of Colerain in the County of Hampshire and State of Massachusetts Bay, yeoman, in consideration of the just sum of eight pounds lawful money to me in hand paid before the delivery hereof by Halifax society in the county of Windham and State of Vermont have released remised and quit claimed unto the said society of Halifax a certain tract of land laying in said Halifax and is a part of the original right No. twenty-nine and bounded as followeth. Beginning at the southwest corner of said right, thence running east ten degrees south thirty-two rods and from thence north ten degrees east twenty rods and from thence west ten degrees thirty-two rods to the west line of said right and from thence south ten degrees west twenty rods to the corner first mentioned, containing four acres of land—To have and to hold the above mentioned premises free of all incumbrances of whatsoever nature during the time the said society or their heirs shall meet on said land for publick worship or have a meeting house standing on said land and appropriate the use of the same to the Congregational or Presbyterian publick worship, and furthermore I the said William Mc Crillis do for myself my heirs, executors, administrators do covenant and engage the above demised premises to the above said society and their heirs during the time the above said society shall associate themselves together on said land for publick worship. In witness whereof I the said Wil-

liam Mc Crillis do hereunto set my hand and seal this twenty-sixth day of July A. D. one thousand seven hundred and eighty-two and in the sixth year of our independence.

WILLIAM MC CRILLIS,    [Seal.]

Signed sealed and delivered in presence of

    HENRY HENDERSON,

    POLLY HALL.

Windham County, ss.    Halifax February 19th, 1788.    Then personally appeared William Mc Crillis signer and sealer of the foregoing instrument and acknowledged the same to be his free act and deed.    Before me,

BENJAMIN HENRY, Justice of the Peace.

*Kellogg & Kirkland*, for the plaintiffs.

*Davenport & Haskins* and *Bradley & Kellogg*, for the defendants.

ALDIS, J.    It is true as claimed by the counsel for the plaintiffs that a deed to a corporation aggregate will convey a fee simple though the word " successor" is not used in the deed.    As such a corporation never dies, it is immaterial whether such a deed is construed as granting to them an estate for life, or a fee, for in their case the one is the same as the other.    Hence the deed of McCrillis to the Halifax society vested in them in fee simple the lands conveyed.

It is further claimed as a necessary consequence that the clause in the habendum of the deed is repugnant to the premises, and therefore void.    The habendum is in these words :—" To have and to hold the premises during the time the said society or their heirs shall meet on said land for public worship, or have a meeting house standing on said land and appropriate the use of the same to the Congregational or Presbyterian public worship." ·

It is the proper office of the habendum to determine what estate or interest is granted by the deed, and to limit, qualify or explain the words used in the granting part of the deed.    Where the estate or interest is set forth in the premises the habendum cannot by the use of words repugnant to such estate defeat it.    Where therefore the habendum is contradictory to the premises, the habendum is void, and the words in the premises stand.    *Co.*

*Litt.* 21.   4 Cruise's Dig §76, p. 273.   *Goodtitle* v. *Gibbs*, 5 B. and C. 709.  2 Bla. Com. 298.   *Timmis* v. *Steele*, 4 Ad. and Ell 664.  (45 E. C. L. 664.)

But where the habendum is not so contradictory to the premises, but only limits, explains or qualifies the words there used, it performs it proper office.   It may lessen, enlarge, limit and qualify the use of the land conveyed so long as it does not defeat the estate granted.

Here the deed in the premises does not describe the estate or interest conveyed, but only the land by its name and boundaries. A deed to a corporation would describe them in the same way whatever was the estate conveyed, whether in fee or for life. Hence in such a deed the description of the estate or interest conveyed would naturally be, and ought to be, in the habendum. A deed to a natural person and his heirs necessarily causes a fee and not an estate for life—not so with a corporation.   Hence this deed to them in the premises describes the land and not the estate or duration of the interest conveyed.   The word successors is not used, still without it they may take a fee, and would if there were no limitation or description of a less estate in the following parts of the deed.   But in a deed to a natural person the word " heirs" would carry a fee, and its absence would show a less estate for life.   The habendum proceeds to explain the use which the grantee is to have of the land, and limit its extent and duration.   It may be a fee simple, the use may last forever if the grantees see fit to occupy it for the purpose for which it is conveyed.   There is no repugnancy between the premises and the habendum.

We do not deem it very material to decide whether the clause in the habendum shall be held to be a condition or a limitation.   The clause in question well illustrates what is said in Sheppard's Touchstone, p. 121, that, " conditions at all times have in their drawing so much affinity with limitations that it is hard to discern and distinguish them."   But the legal effect of this language clearly is, that when the grantees cease to meet on said land for public worship, and fail to have a meeting house on the land and to appropriate its use to Congregational or Presbyterian public worship, then their title ceases, and the grantor or his heirs may re-enter and hold the land.

We think, therefore, that the county court was right in holding that the grantor and his heirs had a reversionary interest in the land, and that when the grantees ceased to comply with the terms and conditions upon which the land was granted to them and to use it as specified in the deed, then their right to the land expired, and the reversionary interest of the grantees came into operation as a present and absolute estate in fee.

II. This leads us to inquire what is the true construction of the condition, (if we may so call it,) in the habendum of the deed. It may be divided into two clauses, and is in these words : " To hold the premises during the time," (1st,) " the said society or their heirs shall meet on said land for public worship ;" (2d,) " or have a meeting house standing on said land, and appropriate the use of the same to the Congregational or Presbyterian public worship.

Let us consider the meaning of the first clause. The words " their heirs" we think the same as their successors and mean their corporate successors. '' The said society" must mean the grantees in the deed—the original Halifax society. They are to have and to hold the land " during the time"—equivalent to *only so long* as " the said society or their successors shall meet on said land for public worship." The grant clearly contemplated the confining of the use of the land to that particular Congregational society and for that particular use, public worship ; and at that very place. " Meet on said land." Hence if any other society met on the land, or this society used it for other use and not for public worship, or this society abandoned meeting on this land for public worship though they continued to meet elsewhere, they forfeited their right to this land.

When therefore " the said society" went to West Halifax, built a meeting house there and met for public worship there, and ceased meeting " on said land for public worship," they no longer complied with the terms of this first clause of the condition. It is said that the minority of the original Halifax society who remained at East Halifax, who organized a new congregational society there, and occupied the meeting house for public worship, may be considered in law as the successors of the grantees in the deed. We think not. The terms of the deed are plain and

explicit—" during the time the said society or their heirs shall meet on said land." "The said society" must receive a forced construction in order to include a new society, organized sixty years afterwards, and that too while the original society was in existence and capable of complying with the condition if it choose *to do so. So "their heirs," meaning "their successors," must be fairly understood to mean corporate successors, to whom the legal existence and identity of the original corporation have been extended by succession. But this applies to those who now form the original society still organized and in full operation at West Halifax. It would be an anomaly in the law of corporations that a society could extend itself in the direct line of organization and succession and have a separate corporate existence through that channel, and yet by new organization under the statute bequeath a portion of its identity to another corporate body, and so beget another separate branch of successors. This privilege of begetting heirs is not yet conferred on artificial persons. The general objects of the two societies are the same, but that is not sufficient to give them legal identity or succession.

As it appears in the case that the original society removed wholly to West Halifax in 1844, and have ever since abandoned meeting on said land for public worship—removed indeed with the intent of meeting elsewhere to worship, and with no intent to return to meet there for worship, we think this was a forfeiture of their rights under this clause of the condition. This appears to have been the view taken of the case in the court below. The exceptions state, " the court ruled that the heirs of McCrillis had a reversionary interest in the land which passed to the defendants ; that the plaintiffs are not in a legal sense the successors of the grantees in the McCrillis deed ; that consequently the house ceased to be occupied for the purposes specified in the deed when the old society erected a new house for public worship and removed to another part of the town, and that after so great a lapse of time it was competent for the defendants to enter the house," &c. The court below construed the meaning of the *whole* condition to be that the original society must meet on the land for public worship. They do not appear to have considered that the society had any greater or other rights under the second clause of the

condition than under the first. The second clause of the condition is, " or have a meeting house standing on the land and appropriate the use of the same to Congregational or Presbyterian public worship."

It is very obvious to us that this second clause of the condition was inserted in the deed with the intention of enlarging the rights of the grantees in the use of the land beyond the strict provisions of the first clause. It was the intention of the grantor to have Congregational public worship kept up in a meeting house on the land. This was the main object. This particular society might remove elsewhere and build a house of worship, (as they have since done,) but if they kept a meeting house on this land and appropriated it to Congregational worship the great purpose of the grant was secured. This is a more liberal and a more reasonable condition. It looks to the great end—the worship of God and the promoting of the cause of religion—it is consistent with what we may well presume to have been the spirit and religious sentiment of the grantor, and the purposes sought to be accomplished by the grantees.

In this view the grantees might authorize the plaintiffs to use the meeting house for Congregational public worship, and so long as they so used it, it was an appropriation of it according to the meaning of the second clause in the condition.

The award, (whatever may have been its exact legal effect between the parties,) the subsequent use by the plaintiffs, and the assent of the original society to such use, as shown by the evidence in the case, clearly prove that the old society authorized the new one to have the exclusive use and possession of the church ; and the case shows that they so continued having public worship there till about three or four years before the defendants' entry upon the premises, and that they were in possession of the house at the time of such entry. While public worship was thus kept up by the plaintiffs there could have been no forfeiture.

Now this preservation of the rights of the grantees through the use of the house by the plaintiffs, is wholly ignored by the county court. They seem to have given to the second clause of the condition the same construction and meaning as the first. In this we think there was error.

It is said by the defendants that even if there was no forfeiture till the plaintiffs ceased to worship there, yet as the case shows that all public worship had ceased for three years before the defendants' entry ; that there had been only one meeting in four years ; that all the male members of the new society, and all but six or eight of the female members had joined the society at West Halifax, these facts created a forfeiture by operation of law so as to justify the defendants entry.   We think we should not be justified in holding that these facts as matter of law would work a forfeiture.   There may be circumstances to explain this cessation of religious services, to show that there were reasonable causes for it, and that there was not only no intent to abandon public worship there, but that there are just grounds of believing that it will soon be revived and firmly re-established.   It is a question of fact, under proper instructions, whether there has been such an intentional abandonment, or such a long and unreasonable non-user of the house for public worship as would work a forfeiture.   It must depend upon the circumstances of the case. The length of time during which there has been no public worship would be an important element, the small number of worshippers, their connection with the old society, and their worshipping there, the causes of the discontinuance of worship and the means of sustaining it, and the reasonable grounds of belief that it will or will not be revived, these and other facts, which no court can anticipate, may be shown as tending to prove that there has or has not been a forfeiture.   The instructions to the jury must be adapted to the case as it shall appear from the evidence on the trial.

As to the stove and pipe.   These were articles of personal property belonging to the old society, and the evidence seemed to establish that by the award and what would seem to be the subsequent assent of the old society, they were given to and transferred to the exclusive possession of the new society.   A forfeiture of the house would not work any forfeiture of the stove. It would still be personal property, and belong to the plaintiffs. As the case must be remanded for a new trial upon the question of the forfeiture of the land, and as our decision settles the question of the right to the stove, we do not deem it necessary to set-

tle the questions that arise as to the effect of this decision in regard to the right to the stove upon the case under the pleadings as they now stand. We may remark, however, that as the breaking of the close is the gist of the action, and the taking of the stove only matter of aggravation, and so not properly traversable, proof under the general issue, and perhaps also under the plea of *liberum tenementum*, that would sustain the defendants right to the close would defeat the action, though the stove belongs to the plaintiff. But there is a peculiarity in the pleadings which may perhaps affect the result. The defendant in his fourth plea alleges that the close was the freehold of the defendant, and that he was the *owner* of the meeting house and *of the stove and pipe.* If the plea had only been *liberum tenementum,* the plaintiffs might if they saw fit, have now assigned the taking of the stove. But as the defendant has seen fit to allege in his plea title to the stove, may not this averment and offer of issue upon a point which it was not necessary for him to plead, relieve the plaintiff from the necessity of any new assignment on that point, and make this by his joinder of issue a material and issuable question. What then would be the result? There is one plea that the close is the freehold of the defendant, and upon that there might be a verdict for the defendant; there is another that the stove is the property of the defendant, and upon that, (if the allegation is held material and the issue the same as if upon a new assignment,) there must be a verdict for the plaintiffs. In the event of such verdicts—one for the plaintiff upon one issue, and another for the defendant upon another issue—what should be the judgment? It is not necessary for us, however, to do more than suggest to counsel the difficulties which may attend the case in the present state of pleadings, growing out of our decision as to the plaintiffs' right to the stove. The result of our decision upon the main question is, that the judgment must be reversed and the case remanded.

Judgment reversed.