# WHEELING.

BROWN *et al. v.* CALDWELL *et al.*

Submitted June 7, 1883—Decided December 15, 1883.

1. A grant of land for a consideration to a trustee upon trust that the·
   trustee "shall at all times permit all the white religious socie-
   ties of christians and the members of such societies to use the·
   land as a common burying ground and for no other purpose," is·
   not a grant upon a condition subsequent.   (p. 189.)

2. Such a grant is void for the want of certainty in the beneficiaries..
   (p. 193.)

3. The heirs of the grantor cannot recover the granted premises in·
   ejectment after they have ceased to be used for the purposes de--
   clared in the grant, there being no words of forfeiture or re-entry
   in the grant.   (p. 194.)

The facts of the case are stated in the opinion.·

| 23 | 187 |
| 34 | 436 |
| 23 | 187 |
| 48 | 437 |
| 23 | 187 |
| 53 | 172 |
| 23 | 187 |
| 56 | 106 |
| 23 | 187 |
| 166 | 148 |

*Daniel Lamb* for plaintiffs in error.

*R. G. Barr* for defendant in error.

SNYDER, JUDGE:

John Prather and wife, by deed, dated April 25, 1814, "in consideration of the sum of one hundred dollars to them in hand paid and of the trusts hereinafter expressed," sold and conveyed to "John Brown and his heirs and assigns forever," one acre of land in the town of Charlestown (now Wellsburg,) Brooke county," for the following uses and trusts, to-wit: That the said John Brown, his heirs and assigns, shall at all times permit all the white religious societies of christians and the members of such societies to use the aforesaid acre of land as a common burying ground, and for no other purpose, unless it be for erecting thereon a house for public christian worship, to be used and governed by free white people; and the said John Brown, for himself and his heirs and assigns, doth covenant that he, the aforesaid John Brown, and his heirs and assigns, will forever permit as aforesaid the premises as aforesaid to be used and occupied as aforesaid, and to and for no other purposes nor in any other manner."

The said land was used as a burial ground from the date of the deed until about the year 1856. The Brooke County Cemetery Company, a corporation organized under an act of the General Assembly of Virginia, passed December 14, 1857, became the owner of certain lots of land in or near Wellsburg which it converted into a cemetery. After 1856, the said one-acre lot was neglected as a burial place and grew up and was covered with briars, brush and weeds, the fences rotted down and it became a public common. The relatives of many of the dead buried there removed the remains of their dead to the grounds of the said Brooke County Cemetery Company, and on February 17, 1872, the Legislature of this State passed an act under which said company took possession and control of said lot and removed the remains of all persons then remaining there and properly re-interred them in its cemetery at a cost of over five hundred dollars, to the doing of which no one objected. By deed, dated Octo-

ber 4, 1879, the said company, in consideration of five hundred dollars, conveyed part of said lot to G. W. Caldwell and leased the residue to Thomas Everett and John Blankinsop and put them in possession. And in August 1880, the plaintiffs, Ruth Brown and others, the heirs at law of John Prather, the grantor in said deed of April 25, 1814, brought this action of ejectment against said Caldwell, Everett and Blankinsop to recover said lot. The action was submitted to the court for trial on an agreed statement of facts and the court gave judgment for the plaintiffs. The defendants obtained a writ of error to this Court.

It is maintained by the plaintiffs, the defendants in error, that the said lot having ceased to be used for the purposes designated in the deed of their ancestor, the title thereto reverted to them as his heirs. The question then to be decided is, does the clause in said deed declaring the purposes for which the grantee and his heirs might permit the land to be used, constitute a condition subsequent such as to avoid the conveyance if it is used for a different purpose ?

In *Rawson* v. *Uxbridge*, 7 Allen 125, it was held that, "a grant of land, which has been used as a burying-place to a town 'for a burying-place forever,' in consideration of love and affection, 'and divers other valuable considerations,' is not a grant upon a condition subsequent." In the opinion of the court, delivered in that case by chief-justice Bigelow, the court says : "It is said in Shep. Touch. 126, that 'to every good condition is required an external form;' that is, it must be expressed in apt and sufficient words, which according to the rules of law make a condition ; otherwise it must fail of effect. This is especially the rule applicable to the construction of grants. A deed will not be construed to create an estate on condition, unless language is used which, according to the rules of law, *ex proprio vigore*, imports a condition, or the interest of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated. Conditions subsequent are not favored in law. If it be doubtful whether a clause in a deed be a covenant or a condition, courts of law will always incline against the latter construction. Conditions are not to be raised readily by inference or argument"—(citing Co. Litt. 205 *b*, 219 *b*; 4 Kent Com. (6th

Ed.) 129, 132; Shep. Touch. 133; *Merrifield* v. *Cobleigh*, 4 Cush. 178, 184; 7 Allen 127, 128.)

The usual and proper technical words by which a conditional estate is granted by deed are "provided," "so as," or "on condition." Coke says, "Words of condition are *sub conditione, ita quod, proviso*"—*Partington's Case*, 10 Co. 42 *a*; Co. Litt. 203 *a*, 203 *b*. So a condition in a deed may be created by the use of the words "*si*" or "*quod si contingat*" and the like, if a clause of forfeiture or re-entry be added. Co. Litt. 204 *a*, 204 *b*; *Duke of Norfolk's Case*, Dyer, 138 *b*.

In public grants and in devises a conditional estate may be created by the use of words which declare that it is given or devised for a certain purpose, or with a particular intention on payment of a certain sum. But this rule is not applicable to grants or gifts except such as are purely voluntary, and where there is no other consideration moving the grantor or donor besides the purpose for which the estate is declared to be created. Such words do not make a condition where used in deeds of private persons. If one makes a feoffment in fee *ea intentione, ad effectum, ad propositum*, and the like, the estate is not conditional, but absolute, notwithstanding. Co. Litt. 204*a*; 1 Wood on Conveyancing, 290. These words must be conjoined in a deed with others giving a right to re-enter or declaring a forfeiture in a specified contingency, or the grant will not be deemed to be conditional. It is sometimes said that where a deed is made in express terms for a specific purpose, or in consideration of an act to be done or service to be rendered, it will be interpreted as creating a conditional estate. But this is an exception to the general rule, and is confined to cases where the subject-matter of the grant is in its nature executory; as an annuity to be paid for services rendered or a right or privilege to be enjoyed; in such case, if the service be not performed or the enjoyment of the right or privilege be withheld which formed the consideration of the grant, the grantor will be relieved from the further execution of the grant, to-wit, the payment of the annuity. But ordinarily the failure of the consideration of a grant of land, or the non-fulfilment of the purpose for which a conveyance by deed is made, will not of itself defeat an estate. The reason for this distinction between the two

classes of cases, as stated by Coke, is "that the state of the land is executed and the annuity executory." Co. Litt. 204a. There is one other class of grants which are sometimes said to be conditional; as when a feoffment is made *ad solvendum*, "for the matter shows that the intent of the feoffer was to have the land or the money. Such grants, are construed to be conditional only in cases where the whole consideration of the grant is the accomplishment of a specific purpose, and the enjoyment of the estate granted is clearly made dependent on the performance of an act or the payment of money for the use or benefit of the grantor or his assigns.

These definitions and rules for the construction of grants of the same character as the one before us, taken from the opinion of the court in *Rawson* v. *Uxbridge, supra*, seem to us to be sound and to warrant fully the conclusion reached in that case, that "there is no authoritative sanction for the doctrine that a deed is to be construed as a grant on condition subsequent solely for the reason that it contains a clause declaring the purpose for which it is intended the granted premises shall be used, where such purpose will not inure specially to the benefit of the grantor and his assigns, but is in its nature public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled." 7 Allen 129. See also, *Ayer* v. *Emery*, 14 *Id.* 67; *Packard* v. *Ames*, 16 Gray 327; *Sohier* v. *Trinity Church*, 109 Mass. 1; *Stanly* v. *Colt*, 5 Wall. 119.

I think the cases of *Hayden* v. *Stoughton*, 5 Pick. 528; *Austin* v. *Cambridgeport*, 21 *Id.* 215; and *Congregational Society*, v. *Stark*, 34 Vt. 243, relied on by the counsel for the defendants in error, are plainly distinguishable from the cases above cited. In each of the deeds in these cases technical words importing a condition are used, and therefore they have no application to deeds such as the one in the case at bar in which no such words are used.

Nor do I think the addition of the words, "and for no other purpose," to the declaration of the purpose of the grant in the deed, can have the effect of converting what would otherwise be an absolute grant into one that is conditional. It is not words of exclusion that create a conditional estate, but words importing an intention to create

such estate. The grant itself must be conditional and not merely the use limited. In the latter case the restriction can at most operate only as a covenant which the grantee might in a proper case be compelled to perform. But it could not make the estate granted conditional.

Upon the doctrines before announced I am clearly of opinion that the language used in the said deed of April 25, 1814, from John Prather to John Brown, did not create an estate with a condition subsequent; and, therefore, that the neglect or failure to use the granted premises for the purposes therein declared, did not cause a forfeiture or re-vest the estate granted in the grantor or his heirs. The deed contains no intimation that it was made on such condition. There are no apt or proper words to create a condition; there is no clause of re-entry or forfeiture. The grant was not voluntary, but for a consideration which was in all probability the full value of the land. The use declared is not for the benefit of the grantor or his heirs or assigns. There can be no doubt of the intent of the grantor that the land should always be used for the purpose declared. This intent is clearly expressed, but there are no words to indicate an intention that if the grantee permitted the land to be used for a different purpose the title should thereupon be forfeited and revert to the grantor or his heirs. The language used is more consistent with an intent by the grantor to repose a trust and confidence in the grantee that he and his heirs and assigns would always fulfil the purpose for which the grant was made, than with an intent to impose on him a condition of forfeiture in any event. Taking into consideration the whole instrument and the purposes of the grant and the absence of any clause of forfeiture or re-entry, it seems to me, the fair construction is, that the grantor intended the title to be in trust and not upon condition. The purpose for which the land was to be used, being in its nature general and public, it is far less reasonable to presume from the language employed, that the grantor intended the grant should be void if the declared purpose should not be fulfilled, than it is that he intended to create a trust to be enforced by the *cestuis que trust* in case the grantee should attempt or permit it to be violated—*Sohier* v. *Trinity Church*, 109 Mass. 1, 19.

It is, however, insisted by the defendants in error that said trust is void for want of certainty of the beneficiaries. This position, I think, is sustained by the decisions of this Court. This deed was made in 1814, and the use or trust declared is, for "all white religious societies of christians and the members of such societies to use the aforesaid acre of land as a common burying ground." The *cestuis que trust* or beneficiaries are therefore "all white religious societies of christians and the members of such societies." It is difficult to conceive of anything more vague, indefinite and general in its character. The societies here designated are neither local nor fixed. They in fact embrace the whole christian world, and are not only indefinite but unascertainable. Under the decisions of this Court this deed is clearly void for the want of *cestuis que trust*—*Carskadon* v. *Torryson*, 17 W. Va. 43; *Knox* v. *Knox*, 9 *Id.* 124; *Bible Society* v. *Pendleton*, 7 *Id.* 79.

In *Carskadon* v. *Torryson*, *supra*, it was decided that every deed must have sufficient certainty as to the grantee who is to take under it. If there is such uncertainty as to the grantee that it cannot be known distinctly who is to take by the grant, it is *ipso facto* void for that uncertainty. And there is not more necessity for a properly defined grantee in a deed than for a *cestui que trust* capable of taking. There cannot be a trust without a *cestui que trust;* and if it cannot be ascertained who the *cestui que trust* is, it is the same thing as if there were none and the deed is void from the beginning— *Gallyo* v. *The Attorney General*, 3 Leigh 665-6. Judge Haymond in the opinion of the Court in that case after stating that it did not appear in that case distinctly, as it does not in this, with whose money the property in controversy was purchased, whether it was the money of the persons named in the deed as trustees or of other persons, says: "If it was the money of other persons, it is not necessary now to consider the question, whether, as the trusts specified in said deed are imperative and in effect void for the reasons aforesaid, the persons whose money paid for the property, have the equitable right to claim the property, or have a resulting trust against the said property in the hands of the persons named in said deed as trustees who are living and the heirs of those

who are dead, as that question does not arise in this case"—17 W. Va. 111.

While the suggestion thus made in that case was not intended as a decision, it was nevertheless an indication of an opinion which seems to have much force and justice in it. But as the claimants here are plaintiffs in ejectment and must, therefore, recover, if they do so at all, on the strength of their own title and not by reason of any defect or want of title in the defendants, it will be sufficient to determine this case, if we ascertain whether or not the title to said one acre of land is in the plaintiffs or either of them without deciding, if it is not in them, in whom the legal or equitable title or right is vested.

The deed, as we have seen, was made in 1814, and the possession then passed from the grantor and has so remained ever since. The deed being void in its inception the right of entry of the grantor existed at that date. The persons in possession did not hold under the grantor, because the deed being void there was no privity between them and the grantor. They were, therefore necessarily holding adversely to the grantor as there can be but two kinds of possession by persons other than the owner, the one in privity with, and the other adverse to, the true owner. The persons so in possession, having the land enclosed and notoriously using and controlling it as their own continuously for over half a century claiming it as their property, certainly barred the right of the plaintiffs long before this action was commenced—*Kincheloe* v. *Tracewells*, 11 Gratt. 587; *Cooey* v. *Porter*, 22 W. Va. 120.

But, even if such were not the case, the plaintiffs are not entitled to recover. Their ancestor was paid for the land and the equitable title, at least, passed from him to the person or persons who paid the purchase-money and he having surrendered the possession to such person or persons, they were entitled to a conveyance of the legal title from him and he could not nor can his heirs recover the said land—Code Virginia chap. 135 § 20. In a former part of this opinion we determined that the deed, if valid, passed from the grantor absolutely and unconditionally the whole estate and title to the land, and now having determined, treating said deed as

void, that he nor his heirs have any right or title, it follows necessarily that the judgment of the circuit court was erroneous and must be reversed with costs, and a judgment entered by this Court for the defendants.

REVERSED.