BOARD OF COM'RS OF MAHONING COUNTY et al. v. YOUNG.

(Circuit Court of Appeals, Sixth Circuit. October 26, 1893.)

No. 89.

1. DEDICATION—ABANDONMENT OF PUBLIC USE.
   Where land is dedicated for a burying ground, whether by a common-law dedication, under which the fee remains in the owner, or pursuant to Acts Ohio, Dec. 6, 1800, and March 3, 1831, under which the fee is vested in the county in trust for the purposes named only, the lawful and effectual abandonment of the land as a burying ground restores the former owner to his right of possession.

2. DEED—ESTATE CONVEYED—REFERENCE TO STATUTE.
   A quitclaim deed to an incorporated village, for a valuable consideration, of all the grantor's right and title to lands previously dedicated for a burying ground by a common-law dedication, only the naked legal title remaining in the grantor, with a possibility that his right of possession might be restored, contained absolute words of conveyance, followed by a declaration that the land was to be under the control of the municipal authority, "in conformity with" a certain act of the state legislature, which purported to vest in incorporated cities and villages the title to public burial grounds therein dedicated as such, but not according to the requirements of law for a statutory dedication, by which the fee would have been vested in the municipality in trust for the public use. *Held*, that such declaration was only declarative of the use, and directory as to the administration of the trust; and the fee conveyed was not thereby rendered a mere qualified fee, or subject to be defeated by the happening of a condition subsequent, but was an absolute fee, subject to the trust. 51 Fed. 585, reversed.

3. SAME—CONVEYANCE TO MUNICIPALITY FOR PUBLIC USE — ABANDONMENT OF USE.

Where land has been conveyed to a village for use as a public burying ground, the village council, in their character as trustees, cannot abandon the use, and thereby defeat the beneficial interest of the public.

4. SAME—CONDITION SUBSEQUENT—USE PREVENTED BY ACT OF LAW.

Even though such conveyance be subject to forfeiture for breach of a condition subsequent as to such use, the breach is excused when the act of the law has prevented such further use of the land. 51 Fed. 585, reversed.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

At Law. Action by Charles C. Young against the board of commissioners of Mahoning county, Ohio, the city of Youngstown, Ohio, and others, to recover lands. Judgment for plaintiff. 51 Fed. 585. Defendants bring error. Reversed.

Statement by LURTON, Circuit Judge:

This is an action of ejectment. The plaintiff was Charles C. Young, a citizen of the state of New York. The defendant was the county of Mahoning, one of the counties of the state of Ohio. The property involved is lot No. 96 of John Young's original plat of the village of Youngstown, upon which now stand the courthouse, jail, and county offices of Mahoning county. A jury was waived, and the cause submitted to the Honorable W. H. Taft, circuit judge, who rendered judgment for the plaintiff. Subsequently, a jury was impaneled, under the statute of Ohio, to ascertain the value of the improvements. Upon final judgment there was an appeal by the defendant to this court.

The facts necessary to be stated for the purpose of this opinion are these: John Young, the ancestor of the plaintiff below, and the common source of title for plaintiff and defendants, signed and recorded, in 1802, a town plat of 100 lots in the township of Youngstown, then in the county of Trumbull, but now in that of Mahoning. This plat was defectively acknowledged under the Ohio statute regulating the acknowledgment and registration of town plats. The result was that the legal title to the streets, alleys, and other open public places was not vested in the village authorities, but remained in Young. Lots Nos. 95 and 96 on this plot were each marked with the words, "Burying ground." From the date of this dedication, down to 1868, these lots were used as a burying ground. In 1865 an adjoining lot owner fenced in a part of lot 95. Suit was brought against him in the name of the county commissioners, but failed upon the ground that the title was not in them. Another suit was instituted in the name of certain citizens of Youngstown for the benefit of the public. One B. F. Hoffman was counsel in this second suit for the plaintiffs. To meet the supposed difficulty about the title, Hoffman procured the passage by the legislature (April 3, 1867) of an act entitled "An act for the protection of certain graveyards and burial grounds." The first section of this act is the only one important to this contention. It was in these words:

"That the title, right of possession and control to and in and of all public graveyards and burial grounds located within incorporated cities and dedicated by the owners, and dedicated as graveyards and burial grounds, but which have not been dedicated according to the forms and requirements of law, be and the same are hereby vested in the cities, towns and villages respectively, where any such graveyards and burial grounds may be located; and the council of such towns, cities and villages are hereby authorized and required to take possession, control and charge of all such grounds within their respective limits and protect and preserve the same, and make such ordinances, sales and regulations as may be necessary and proper for said purposes and consistent with the health and welfare of the inhabitants; and they are also authorized and required, when necessary, to institute suits in the names of said municipal corporations to recover possession of said grave-

yards and burial grounds, remove trespassers therefrom and recover damages for injuries thereto for any part thereof, or to any tomb or monument therein."

Pending that suit, and after the passage of this act, Hoffman procured from the plaintiff, Charles C. Young, who was then living in Whitestown, N. Y., and in whom was vested the legal title by descent from his father, John Young, and by deeds from his brothers and sisters, a quitclaim deed to both lots 95 and 96. This deed is in these words:

### "C. C. Young to Village of Youngstown.

#### "Quitclaim Deed.

"To all to whom these presents shall come, greeting: Know ye, that I, C. C. Young, of Geneva, in the state of New York, for divers good causes and considerations thereunto moving, especially for one dollar received to my full satisfaction of the incorporated village of Youngstown, in the county of Mahoning, in the state of Ohio, have given, granted, remised, released, and forever quitclaim, and do by these presents absolutely give, grant, remise, release, and forever quitclaim, unto the said incorporated village of Youngstown and its successors forever, to be under the authority and control of its proper council and municipal authority, in conformity with the act of the legislature of Ohio in that behalf, all such right and title as I, the said C. C. Young, as one of the heirs, and as the assignee and grantee of the other heirs and devisees, of John Young, the original proprietor of said township and village lands, have or ought to have in and to the following described lands: Situate in the said village, and known and designated on the original plat of said village made by said John Young and recorded in Trumbull County Records of Deeds, Book A, p. 118, as burial grounds, and being inlots numbers ninety-five and ninety-six, and used as burial grounds by the citizens of said village and township since about the year 1799. Said inlot No. 95 lies on the west side of Market street, and extends westerly to inlot No. 94, and covers all the ground inclosed and used as a burial ground for over fifty years; and said inlot No. 96 lies on the east side of said Market street, and includes the grounds inclosed and used as a burial ground for a like period. To have and to hold the premises aforesaid unto the said grantee, said incorporated village of Youngstown, and its successors, forever. In witness whereof I have set my hand and seal this 10th day of July, A. D. 1867.                                                     C. C. Young. [L. S.]

"Signed, sealed, and executed in the presence of
    "John W. Smith.
    "Samuel Louthrop."

The city council of Youngstown accepted this deed, and the suit against the trespasser was thereafter conducted in its name and in its behalf. The consideration for this deed was the sum of $15, paid to Hoffman on account of Charles Young, being a debt due from Young to Hoffman about other matters. Young required the city of Youngstown to assume this debt to Hoffman, and pay the same as a consideration for the conveyance.

In 1868 the council of Youngstown, which had then ceased to be a village and become a city, passed an ordinance by which all interments in the old burying ground were thereafter forbidden, and the remains of those already interred there, which should not be removed by friends and relatives before April 1, 1869, were ordered removed at public expense. This ordinance was executed, and all bodies removed. From that time until 1874 the lots lay open and unused. In 1874 the legislature provided that the county site of Mahoning county should be removed from Canfield to Youngstown, on condition that Youngstown should donate a lot, and erect thereon the county courthouse, jail, and offices at a cost of not less than $100,000, free of expense to the county. This condition was accepted, and by ordinance passed in 1875 it was directed that a deed in fee to said lots 95 and 96 be made to a committee of five citizens, who were constituted a building committee, charged with the duty of erecting the courthouse and other public buildings, and then making conveyance, when completed, to the county commissioners

of Mahoning county. The buildings were duly erected, and in August, 1876, the lot on which they stood was conveyed to the county commissioners, and since that date have been occupied by the courts and county officers of Mahoning county. Lot No. 95 was not used by the building committee, and the title remains in that committee. The present suit involves only lot No. 96, and was begun in December, 1891.

Disney Rogers, A. W. Jones, and Geo. F. Arrel, for plaintiffs in error.

F. E. Hutchins, T. W. Sanderson, and M. A. Norris, for defendant in error.

Before BROWN, Circuit Justice, LURTON, Circuit Judge, and SEVERENS, District Judge.

LURTON, Circuit Judge, (after stating the facts.) We quite agree, upon the facts of this record, that the plaintiff's title is good, and that he is entitled to recover, if the case is to turn alone upon the effect of the common-law dedication made by John Young in 1802. The dedication under the unacknowledged plat of that year was good only as a common-law dedication. The plat was only evidence of the purpose of the dedicator with regard to lots 95 and 96. The acceptance and use by the public of them as a burying ground, taken in connection with the plat, operated as a dedication for burying purposes. This sort of dedication operated only by estoppel. The acquiescence of the owner, and that use by the public, estopped him from asserting any right of possession hostile to such use. The public acquired an easement for that purpose, and that only. This seems to be the well-settled ground upon which a common-law dedication becomes operative and effective. Fulton v. Mehrenfield, 8 Ohio St. 440; Wisby v. Bonte, 19 Ohio St. 238. The right of the public being a mere easement, the owner of the fee may resume possession whenever there has been a full and lawful abandonment of the use for which the dedication was made. The estoppel ceases to operate when the use ceases. "The dedication," as forcibly put by the circuit judge, "has spent its force" whenever the use becomes impossible. This is the well-settled rule concerning public roads, streets, and alleys, when the fee remains in the owner of land over which a public road has been established. Barclay v. Howell's Lessee, 6 Pet. 498.

The result would be the same under the construction placed upon the Ohio acts of December 6, 1800, and March 3, 1831, by the court of that state. The acts referred to provide that the due acknowledgment and proper registration of a town plat "should be deemed a sufficient conveyance to vest the fee of such parcels of ground as are therein expressly named and intended to be for public uses in the county in which such town lies, in trust to and for the uses and purposes therein named, expressed or intended, and for no other uses or purposes whatever." Under this statute the Ohio court held this statutory title and dedication conferred "no power of alienation discharged of the use by which the purpose of the dedication might be defeated," and that, "should the sole uses to which the property has been dedicated become impossible of execution, the property

would revert to the dedicators or their representatives." Board of Education v. Edson, 18 Ohio St. 226. The case of Zinc Co. v. City of La Salle, 117 Ill. 411, 8 N. E. 81, was under a like statute, and is in accord with the Ohio case. It follows, under the law of Ohio, that whether the fee be in the dedicator, or be in the town or county, by virtue of the statute concerning properly registered town plats, the dedicator, or his heirs, may repossess himself whenever it is no longer possible to use the property for the purposes indicated by the dedication, or whenever there has been a full and lawful abandonment of the easement by the beneficiaries. The lawful and effectual abandonment of these lots as a burying ground would therefore operate to restore the owner to his right of possession by the termination of the easement.

The case of Campbell v. City of Kansas, 102 Mo. 326, 13 S. W. 897, goes to this extent, and no further. The parcel of land involved in that suit had been marked upon a town plat as donated for burying purposes. The city council afterwards, by ordinance, caused the bodies there buried to be removed, and converted the plot into a public park. The plat was never properly acknowledged or registered, and the title therefore remained in the dedicator. The heirs of the original owner sued in ejectment, and recovered; the Missouri court holding that the public had only an easement for burial purposes, and that the lawful abandonment of this easement revested the dedicator with the right of possession. It was not a case of an estate upon condition, but a case of a mere easement for a specified use.

This brings us to a consideration of the effect of the deed made in 1868 by the plaintiff to the village of Youngstown. Is this deed equivalent only to a statutory dedication? Is it a grant subject to be defeated by any subsequent event? To entitle the plaintiff to recover, he must show that the estate conveyed by him has terminated, and that he now is entitled to re-enter. The construction put upon this deed by the circuit judge was governed by his view of the act of 1867, and, by treating it as a part of the deed, he thought that that act only undertook "to confer upon the village the power and control over the burying ground which the public would have in such grounds, dedicated for burial purposes, at common law;" that it fixed "the trustee to preserve the rights of the public in a common-law dedication;" and that "the authority and control of the council is limited by the act to the preservation of such rights, and, by reading the act into the deed, the same limitation upon the fee therein conveyed is created." The result of this construction of the act of 1867, when read into the deed, he sums up in his conclusion thus: "The effect of the deed here was to put the parties in exactly the same situation that they would have been in had the dedication of John Young, in 1802, been in accordance with the statute then in force." This is a strong position. Its error seems to lie in confounding the distinction between the effect of a grant by deed for a public use and a common-law or statutory dedication for a like purpose. To say that, by reading the act of 1867 into the deed, the effect is to cut it down into an instrument operating only as if the

grantees held under a statutory or common-law dedication, is to assume the whole point in controversy.

We shall not antagonize the soundness of the construction put on the act of 1867. If it had been possible, by retrospective legislation, to divest a legal title out of one and vest it in another, the result, after all, would have been but a statutory dedication. Under the Edson Case, such a dedication, though operating to pass the title for the uses and purposes specified in the instrument, would terminate when the use became impossible. That case may be treated as recognizing no distinction between the duration of a common-law dedication and a statutory dedication operating to pass the legal title. The well-settled distinction between a grant by deed and a dedication for a particular use is not touched upon in the Edson Case. Subsequently, the same court, in Taylor v. Binford, 37 Ohio St. 262, expressly treated the question as undecided, and reserved its consideration. The circuit judge, whose opinion we are now considering, clearly recognized this distinction, and undertook to take this case without the rule affecting grants by deed.

On this subject he said:

"Counsel for the defendants contend that there is a distinction between a grant by deed and a dedication for a particular or specific use, and that a condition subsequent cannot be created in a deed by limiting the use, unless there be a clause of re-entry for forfeiture; and several strong cases are cited to sustain the claim with respect to a deed. Raley v. Umatilla Co., 15 Or. 180, 13 Pac. 890; Packard v. Ames, 16 Gray, 327; Ayer v. Emery, 14 Allen, 67; Brown v. Caldwell, 23 W. Va. 187; First M. E. Church of Columbia v. Old Columbia Public Ground Co., 103 Pa. St. 608. In Taylor v. Binford, 37 Ohio St. 262, the supreme court of Ohio declined to decide whether the law of Ohio was in accordance with these authorities, and the question is an open one in this state. But these cases do not apply to the construction of the deed at bar. Here the conveyance is in fee to the village to exercise certain defined possession and control over the land, namely, that possession and control exercised by the public over an easement acquired by common-law dedication. The fee reverts, not by entry after condition broken, but by a simple termination of the estate on the impossibility of exercising the possession and control for which it was given."

What is the character of the fee conveyed by this deed? Three solutions are possible:

(1) That it operated, as held by the circuit court, only to pass such qualified fee "as would pass under a statutory dedication," and that the fee reverts, "not by entry after condition broken, but by a simple termination of the estate on the impossibility of exercising the possession and control for which it was given."

(2) That it conveyed the fee, subject to be defeated by the happening of a condition subsequent.

(3) That it conveyed an absolute fee, subject to a trust that it should be preserved as a burial ground.

Let us take these solutions up in the order stated. At the outset it may be confidently said that the cases relied upon as supporting the first solution were not cases of voluntary grants by deed. They were, with one exception, all cases under statutory dedications, and the court only considered the effect of an abandonment of the public use to which the property had been devoted by statutory dedication. The cases were: Board of Education

v. Edson, 18 Ohio St, 221;. Gebhardt v. Reeves, 75 Ill. 301; Zinc Co. v. City of La Salle, 117 Ill. 411, 8 N. E. 81; Hooker v. Utica, etc., Road Co., 12 Wend. 371; Slegal's Executors v. Herbine, decided by the supreme court of Pennsylvania, but reported only in 25 Atlantic Reporter, 996.

The latter was a case of a qualified or base fee, subject to be defeated by the abandonment of the use. It was not a mere conveyance subject to a trust for a public use, for the grantor reserved to himself "the free use of the premises so granted for an open yard, garden, or grass plot, with the rents, issues, and profits." The land adjoined a prison wall, and the object of the public was to secure an open space adjoining the walls to prevent escapes. This object was accomplished by a conveyance which, though it vested the fee, yet was so specific in defining the purpose for which the fee was conveyed, and so clear in reserving to the grantor the use of the premises, subject to the space being kept open, that although the deed contained no express clause of re-entry upon abandonment by the grantee, yet it was clear that the fee was a base or determinable one. The case is authority only for the proposition that technical words importing an estate determinable upon a condition subsequent are not always essential, if the clear intent of the parties is shown by the whole scope of the instrument to be that the estate shall determine upon the cessation of the use defined. The reservation by the grantor of an interest in the use has long been regarded as a circumstance of great moment in construing such deeds. Rawson v. Uxbridge, 7 Allen, 125.

In the case last quoted, Bigelow, C. J., said:

"We believe there is no authoritative sanction for the doctrine that a deed is to be construed as a grant on a condition subsequent solely for the reason that it contains a clause declaring the purpose for which it is intended the granted premises shall be used, where such purpose will not inure specially to the benefit of the grantor and his assigns, but is in its nature general and public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled."

The Pennsylvania court has always adhered to the rule that "the mere expression of a purpose will not, of and by itself, debase a fee." Kirk v. King, 3 Pa. St. 436; Scheetz v. Fitzwater, 5 Pa. St. 126; First M. E. Church of Columbia v. Old Columbia Public Ground Co., 103 Pa. St. 613. This very principle is announced and adhered to in Slegal's Case. The defendants here are not holding under a mere common-law dedication. Neither are they holding under a statutory dedication. No statute operates in their favor, or affects their rights. They hold under a grant by deed. The character of the fee conveyed must be ascertained by a construction of the words of that deed. If the conveyance is less than an absolute fee simple, it must be because the deed has so limited and qualified the fee conveyed as to make it dependent upon conditions either precedent or subsequent. To determine this, we may look to the whole deed, and search its four corners, to ascertain the intent of the grantor. If the deed refers to some other paper as containing the boundaries or as defining

the objects and purposes of the grant, we may look to this paper thus, by reference, made a part of the grant. If by apt words the quantity of estate to be conveyed is measured and defined in another instrument, then we may look to that other instrument to see how far the estate is a qualified one. This is all that we understand by "reading into this deed the act of 1867." We are, however, to bear in mind that the instrument we are construing is a deed. That it purports on its face to be a grant "absolute" and in fee. If it is less than this, it is because by necessary implication these words are qualified by the reference made to another instrument, to wit, the void act of 1867. If this is less than a fee absolute, —if this is a deed subject to be defeated by a condition,—that condition must clearly and unambiguously appear from the words of the instrument. "Conditions are not to be raised readily by inference or argument." Co. Litt, 205b, 219b; 4 Kent, Comm. (6th Ed.) 129--132.

On this subject, Mr. Washburn says:

"But conditions subsequent, especially when relied on to work a forfeiture, must be created by express terms or clear implication, and are construed strictly." 2 Washb. Real Prop. (6th Ed.) p. 6.

Starting out with the fact that this is a grant by deed, and that it conveys a fee, we are to inquire whether this fee has been divested or defeated by the occurrence of any event subsequent to the execution of the deed. Conditions subsequent are, as the term implies, such as, "when they do happen, defeat an estate already vested." What are these conditions which have operated to defeat the estate conveyed? The insistence is that the legal impossibility of the future use of this lot as a burying ground operates to determine the fee. Does the deed, either expressly or by strong and clear implication, provide that the estate shall be forfeited when this lot shall cease to be used for burial purposes? It is to be observed at the outset that the deed does not in terms provide for any such contingency. There is no reservation of a right of re-entry, and none of the words are used which, according to the cases, ordinarily imply a condition. These words or forms of expression are usually found where the grantor intended to qualify his conveyance. Among the forms of expression which imply a condition in a grant, "the writers," says Mr. Washburn, "give the following: 'On condition;' 'provided always;' 'if it shall so happen;' or 'so that he the grantee pay,' etc.; * * * and grants made upon any of these terms vest a conditional estate in the grantee." The same author says: "And it is said other words make a condition, if there be added a conclusion with a clause of re-entry, or, without such clause, if they declare that, if the feoffee does or does not do such an act, his estate shall cease or be void. * * * But it is said 'that if one makes a feoffment in fee,' 'ea intentione,' 'ad effectum,' * * * that the feoffor shall do or not do such an act, these words do not make the estate conditional, but it is absolute notwithstanding. * * * And yet these words may create a condition if a right of re-entry is reserved in favor of the grantor in case of failure to carry out the intention thus expressed." 2 Washb. Real Prop. (5th Ed.) 3.

As stated, none of the words which technically imply a conditional estate are found, and there is no clause of re-entry.   Yet a condition subsequent may be so strongly and clearly implied from the whole tenor of the deed as to demand recognition, though not expressed in technical language.   This is the contention upon which counsel for appellee has planted this case.   Let us look at the circumstances under which this deed was made.

(1) The lots had been dedicated by a good common-law dedication, as far back as 1802, by the ancestor of plaintiff, as a public burying ground.

(2) In consequence of a trespass, a suit had been brought, the progress of which was embarrassed because the common-law dedication had not operated to pass title.

(3) To obviate this difficulty, the legislature had passed the act of 1867.

(4) This act was absolutely void.   Its object was to divest the legal title out of the heirs of John Young, and vest it in the council, and thus turn a mere easement into a legal estate.   The act was inoperative because it was not in the power of the legislature to thus divest the title out of the legal owners, or enlarge the estate which had been granted.   It was not "due process of law," and was a taking of property without compensation.   Le Clerq v. Gallipolis, 7 Ohio, 217; Board of Education v. Edson, 18 Ohio St. 221.   So far as the act undertook to vest power in the councils to manage and preserve such burial grounds, it was likewise inoperative, because it was applicable only to such burial places as were described in the act, to wit, grounds, the title to which should vest under the act.   The whole act was then void.

(5) At the date of the act of 1867 the legal title reserved by John Young was in Charles Young, partly by descent, and partly as a result of conveyances to him by the other heirs of John Young.   These lots had been exclusively used for burial purposes, and had been so used for some 65 years.   This use seemed likely to be perpetual, and the naked legal title outstanding in Young could not have been regarded as of any considerable value.   That the time would ever come when, by abandonment, his right of possession should be restored, was one of these improbable events hardly worth serious consideration.

(6) The "right, title, claim, and interest" of Charles Young consisted in a naked legal title, coupled with a possibility that at some time the public use might become impossible, and his right of possession be restored.

(7) This act being at least of doubtful value, Charles Young was applied to to convey the title and interest vested in him to the village of Youngstown.   As the result of this application, the deed now under consideration was executed.   It was not a gift or donation. He required the payment of $15 as a consideration, and only permitted a delivery of the deed upon the assumption by the city of a debt he owed of that amount.   Looking to the situation as it stood then, this was probably an adequate consideration for the quitclaim he then executed.

(8) He used words fully adequate to convey absolutely any interest or possibility of interest. These words were: "Do by these presents absolutely give, grant, remise, release, and forever quitclaim." These words are followed by the declaration that the lots so conveyed were "to be under the authority and control of its proper council and municipal authority, in conformity with the act of the legislature of Ohio in that behalf, all such right and title as I, the said C. C. Young, as one of the heirs, and as the assignee and grantee of the other heirs, of John Young, the original proprietor of said township and village lands, have, or ought to have, in and to the following lands. * * * To have and to hold the premises aforesaid unto the said grantee, said incorporated village of Youngstown, and its successors, forever."

Construing this deed in the light of all the circumstances, giving due and proper weight to all the words of the deed, and bearing in mind the rule that conditions subsequent, when relied upon to work the forfeiture of a vested estate, must be created in expressions or by implication so clear and unambiguous that there can be no doubt as to the intent of the grantor, we reach the conclusion that the declaration that these lots were to be under the control of the municipal authority, "in conformity with the act of the legislature of Ohio in that behalf," is only declarative of the use, and directory as to the administration, of the property, by the council as trustee. The power of the council comes from the deed and the general law concerning trusts, and does not spring from the void act of 1867.

That the grantor ever contemplated a reverter is not to be presumed, in the light of the presence of absolute words of conveyance and quitclaim, and the absence of any provision for a reverter or re-entry. If it had been intended that the conveyance should terminate on an abandonment of the public use, it is strange that some language was not used indicative of such purpose. Too much weight was attached to the circumstance that the city wished the title in order to maintain a suit against a trespasser. Such suit could have been maintained without the title. Too little weight has been given to the fact that the deed was upon a valuable consideration; to the fact that it was a quitclaim of all right, title, and interest; to the fact of a previous common-law dedication; and to the failure, under such circumstances, to make the title subject to an express right of re-entry. The minuteness of direction concerning the administration of property conveyed to a public use is insufficient to take the case out of the rule, supported by an overwhelming weight of authority, that the mere expression of a purpose or particular use to which property is to be appropriated will not make the estate a conditional one. Rawson v. Uxbridge, 7 Allen, 125; Raley v. Umatilla Co., 15 Or. 180, 13 Pac. 890; Packard v. Ames, 16 Gray, 327; Ayer v. Emery, 14 Allen, 67; Brown v. Caldwell, 23 W. Va. 187; First M. E. Church of Columbia v. Old Columbia Public Ground Co., 103 Pa. St. 608; Thornton v. Trammell, 39 Ga. 202; Sohier v. Trinity Church, 109 Mass. 1; Congregational Soc. v. Stark, 34 Vt. 243; Strong v. Doty, 32 Wis. 381; Farnham v. Thompson, 34 Minn. 330, 26 N. W. 9; Episcopal Mission v. Appleton, 117 Mass.

326; Kerlin v. Campbell, 15 Pa. St. 500; Baldwin v. Atwood, 23 Conn. 367; Graves v. Deterling, 120 N. Y. 447, 24 N. E. 655; Stanley v. Colt, 5 Wall. 119.

"Words more often create a condition in a will, which would not, if used in a deed; as, when, in a deed, an intention is expressed in devising the land that the devisee should or should not do certain things with respect to it, it may be construed as creating a conditional estate in him." 2 Washb. Real Prop. 3.

But, as illustrating the strong leaning of the court against the forfeiture of estate once vested, the case of Stanley v. Colt, supra, may be cited. In that case the devise was to the Second Ecclesiastical Society of Hartford of the real estate of the testator, "to be and to remain to the use and benefit of said society and their successors, forever." Then followed this: "Provided, that said real estate be not ever hereafter sold or disposed of, but the same may be leased or let, and the annual rents or profits applied to the use and benefit of the society;" and in connection were added numerous directions for the management of the property and guidance of the trustees. The property was sold. The heir at law sued the purchasers, and contended that the estate was upon condition, and had been forfeited by the sale. The case was elaborately argued, and the unanimous opinion of the court was that the estate was not a conditional one. Mr. Justice Nelson, speaking of the purpose of the testator, as expressed in the will, said:

"The heirs cannot recover unless they can show that the devise was upon some condition, or that there was some limitation made in the will in their favor. It is not sufficient to show that the lands have been diverted from the use for which they were devised, or that they had not been enjoyed by the beneficiaries in the particular manner described by the testator; for, where lands have been devised to a charitable use in fee simple, the heir has no more interest in, and no more right to, the lands, than he has when they are devised to an individual in fee simple, either directly or in trust. The public have an interest in the execution of public charities, and the beneficiaries have an interest; and if the directions contained in the will of the testator, either as to the manner of enjoyment or the objects who are to be benefited by his bounty, are departed from, either the public or the beneficiaries, if they are sufficiently certain and have a sufficient vested interest, may have a remedy. * * * That although the law allows testators to impose conditions subsequent, a breach of which will create a forfeiture, yet the law deems it improbable that the testator will do so, and therefore leans against any construction which would result in such a condition. Courts will not give it that effect by construction."

The court concluded that the estate was not a conditional one, though there occurred the word "provided," and the supposed conditions were to be regarded as mere "limitations in trust," and not as conditions subsequent.

Baldwin v. Atwood, supra, is another case much in point, and illustrating the tendency of the courts to construe directions concerning the administration of property conveyed for a particular use as simply creating a trust cognizable in equity, and not constituting a conditional grant. The reporter's headnote is a concise abstract of the case, and is as follows:

"Where a deed of land stated, in the premises, that the land was 'conveyed in trust for the use and purposes hereinafter mentioned,' and, in the habendum, that the grantees were 'to have and to hold said land in trust that they shall at all times forever hereafter permit such ministers and teachers belonging to the Methodist Episcopal Church in the United States of America as shall be duly authorized, from time to time, by the general conference of the ministers and teachers of said church, or by the annual conference authorized by the general conference, to preach and expound God's holy word in the house or place of worship which has been erected on said land for the use of the members of said church,' and said deed subsequently prescribed the mode of supplying trustees in the place of the grantees who might die or cease to be members of the church for whose benefit the grant was made, in further trust and. confidence, it was held that such deed was not to be construed as a deed on condition, in which case a breach of it would be followed by a forfeiture of the estate, but as a deed in trust, cognizable in chancery. Therefore, where the land described in such deed was afterwards conveyed, with the consent of the cestuis que trustent, and sold by the trustees for other purposes, it was held that such disposition did not operate as a forfeiture of the estate to the heirs of the grantor."

In Thornton v. Trammell, supra, the deed was a conveyance in fee, and contained the following words:

"It being expressly understood by the parties that the said tract or parcel of land is not to be put to any other use than that of a depot square, and that no business or improvements are to be put on the said tract but that which is immediately connected with the Western & Atlantic Railroad."

Held, that these words in the deed were words of covenant, and not words of condition, and that the plaintiff's remedy for a breach thereof was an action thereon for damages, and not a forfeiture of the estate for condition broken.

In Rawson v. Uxbridge, supra, the grant was of land which had been used as a burying ground, in consideration of love and affection, "for a burying place forever." Held, that it was not a grant on condition subsequent.

Hayden v. Stoughton, 5 Pick. 528, and Austin v. Cambridgeport Parish, 21 Pick. 215, were both cases arising on deeds containing technical words creating a conditional estate, and are in entire accord with the Massachusetts cases before cited.

Hunt v. Beeson, 18 Ind. 380, was a donation of land to a town for the purpose of erecting a tanyard thereon. This was held to create a condition. The case was wrongly decided on the authority of Hayden v. Stoughton, supra, in which case there were technical words of condition,—a fact which the Indiana court undoubtedly overlooked.

But if we are wrong in the conclusion that we have announced, that the fee conveyed was not a base fee, and not subject to forfeiture for condition broken, still, the plaintiff ought not to recover, because the forfeiture is excused when the act of the law has prevented the further use of the estate for the public purposes intended by the grantor.

These lots were used for burial purposes so long as such use was permitted by law. The cessation was the direct result of the law which prohibited a longer use. The council of the village of Youngstown were the trustees holding the legal title and protect-

ing the use.   The people of Youngstown were the beneficiaries under the trust.   The council, in their character as trustees, could do no act to defeat the beneficial interest of the public.   A court of equity would take cognizance, and restrain any act calculated to defeat the use.   Barclay v. Howell's Lessee, 6 Pet. 498.   As trustees the council could not, without the voluntary acquiescence of the cestui que trust, abandon the use or defeat the estate.   Id.

The double character of the council is well illustrated in the case of Corporation of the Brick Presbyterian Church v. City of New York, 5 Cow. 538.   The city of New York conveyed to the plaintiffs, in 1766, a tract of land.   The lessees covenanted to pay forever an annual rent; that a brick church should be built thereon, or the premises used as a cemetery; also, that the premises should never be used for any secular purposes.   The city covenanted that the lessees should forever quietly enjoy, use, and occupy the premises without let or hindrance.   The city council, in 1823, by ordinance prohibited the use of the premises as a cemetery.   The action was for a breach of the covenant.   The city justified its ordinance under its charter.   The question was whether the covenant for quiet enjoyment had been breached by the city.   The court said:

"The principal question, and the only one which is necessary to decide, is whether by the law of October, 1823, it is per se a violation of the covenant for quiet enjoyment contained in the deed of the 25th of February, 1766, for which the defendants are liable to pay damages. The validity of the by-law is asserted by both parties. We are relieved, therefore, from any inquiry on that point. The defendants are a corporation, and in that capacity are authorized, by their charter and by-law, to purchase and hold, sell, and convey real estate in the same manner as individuals. They are considered a person in law, within the scope of their corporate powers, and are subject to the same liabilities, and entitled to the same remedies, for the violation of contracts, as natural persons. They are also clothed, as well by their charter as by subsequent statutes of the state, with legislative powers, and, in the capacity of a local legislature, are particularly charged with the care of the public morals and the public health within their jurisdiction. In ascertaining their rights and liabilities as a corporation or as an individual, we must not consider their legislative character. They had no power, as a party, to make a contract which should control or embarrass their legislative powers and duties. Their enactments in their legislative capacity are to have the same effect upon their individual acts as upon those of any other persons or the public at large, and no other effect. The liability of the defendants, therefore, upon the covenant in question, must be the same as if it had been entered into by an individual, and the effect of the by-law upon it the same as if that by-law had been an act of the state legislature,—is expressly authorized by the legislature; and whether it be their act, or an act of the local city legislature, makes no difference. Dartmouth College v. Woodward, 4 Wheat. 652. The plaintiffs, then, are entitled to the same remedy as if the premises had been conveyed to them by an individual, under the like conditions and covenants. This being so, the defendant's proposition is that, the act of the legislature rendering the covenant unlawful, the covenant itself becomes inoperative. There are but few authorities on this question, and those few are at variance. The case of Brason v. Dean, 3 Mod. 39, decided in 1683, was covenant upon a charter party for the freight of a ship. The defendant pleaded that the ship was loaded with French goods prohibited by law to be imported; and, upon demurrer, judgment was given for the plaintiff, for the court were all of opinion that if the thing to be done was lawful at the time when the defendant entered into the covenant, though it was afterwards prohibited

by act of parliament, yet the covenant was binding. But in the case of Brewster v. Kitchin, 1 Ld. Raym. 317, 321, A. D. 1698, a different and a more rational doctrine is established. It is there said: 'For the difference, when an act of parliament will amount to a repeal of a covenant, and when not, is this: When a man covenants not to do a thing which was lawful for him to do, and an act of parliament comes after, and compels him to do it, then the act repeals the covenant, and vice versa; but when a man covenants not to do a thing which was unlawful at the time of the covenant, and afterwards an act makes it lawful, the act does not repeal the covenant.' In 1 Salk. 198, where the same case is reported, the proposition is thus stated: 'Where H. covenants not to do an act or thing which was lawful to do, and an act of parliament comes after, and compels him to do it, the statute repeals the covenant. So, if H. covenants to do a thing which is lawful, and an act of parliament comes in and hinders him from doing it, the covenant is repealed; but if a man covenants not to do a thing which then was unlawful, and an act comes and makes it lawful to do it, such act of parliament does not repeal the covenant.' That such is the correct rule, as between individuals, seems to be admitted by counsel for the plaintiffs. But it is contended that the rule is not applicable to a case where the same party makes the covenant, and afterwards makes the legislative act which abrogates the covenant. There is indeed a seeming inconsistency; but the solution has already been given, viz. that the defendants had no power to limit their legislative discretion by covenant; and they are not estopped from giving this answer."

The case was followed and approved in Coates v. Mayor, etc., 7 Cow. 585.

But, as an arm of the civil government, the council were vested with public power, and, in the interest of the public health, might by law prohibit the further use of the property for burial purposes. This power of the city council as a lawmaking body is to be distinguished from its power as trustee under the deed. The same body had two characters and two functions. In that of trustee, its power proceeded from the deed. The trust thus vested could not be abandoned effectually without concurrence of the cestui que trust. In their character as an arm of the state government, it could not be restrained by the trusts imposed by the deed. Neither could the cestui que trust be said to have voluntarily abandoned the use, when the law stepped in and forbade, by its penalties, a further use.

These principles are as well settled in the law as are those principles relied upon by the plaintiff as producing a reverter. Mr. Washburn, in speaking of what will excuse a forfeiture, says:

"As a condition subsequent may be excused when its performance becomes impossible by the act of God, or by the act of the party for whose benefit it was created, or is prohibited or prevented by act of the law, so it may be waived by the one who has a right to enforce it." 2 Washb. Real Prop. 15.

The case of Marquis of Anglesea v. Rugeley, 6 Q. B. 107, is in point. Land was demised to trustees for the benefit of the poor of a parish, the trustees covenanting to build a workhouse thereon, and to use, occupy, possess, and enjoy the premises for the sole use, maintenance, and support of the poor of R., and not to convert the building or the land, or employ the profits thereof, to any other use, intent, or purpose whatever. There was a proviso for re-entry on breach of the covenant. The house was built, and the land was used for many years as required by the deed. After-

wards, an act of parliament was passed, and parish R. incorporated, with others, and a union poorhouse provided; to which the act required all paupers should be removed. The heirs of the grantor brought suit in ejectment, claiming the right of re-entry for breach of the condition. The court held that, "even if the condition was not performed, it appears to us that the nonperformance would in this case be excused, as being by act of law, and involuntary on the part of the lessees." The court cited Bac. Abr. tit. "Condition;" Com. Dig. tit. "Condition;" and the case of Brewster v. Kitchell, 1 Salk. 198. The case of Lord Grantley v. Butcher, reported in 51 E. C. L. 115, is to the same effect.

We are therefore led to the conclusion that if the title was a base or conditional one, yet the breach of condition relied upon as creating a right of re-entry is excused, because the breach was the act of the law.

The judgment should be reversed, and the cause remanded, with directions to render judgment for the defendants.