# CHARLESTON.

## WILMOTH v. WILMOTH.

*(HOLT, JUDGE, absent.)

Submitted June 12, 1890.—Decided December 10, 1890.

1. WILLS—ESTATE—LIMITATION OF ESTATE.
   The second clause of a will giving a wife all of the testator's per-

---

*Case submitted before Judge Holt's appointment.

sonalty "to be hers absolutely, to be used by her in any way or manner she may wish for her own comfort and for the comfort and benefit of our two children," gives the wife an absolute estate.

1. WILLS—LIMITATION OF ESTATE.
   There is no implied or precatory trust thereby created for the children.

3. WILLS—LIMITATION OF ESTATE.
   The fourth clause, directing "that in case of the death of my wife and also of my two children without any heirs, that my estate, both real and personal, be placed under the control of the Western Virginia Annual Conference of the M. E. Church, South, to be used by them for the support of the superannuated and worn-out preachers of said church and their wives," was not intended to and does not qualify the wife's absolute estate conferred by the second clause.

4. WILLS—LIMITATION OF ESTATE.
   The limitation over to the conference is void.

*Butcher & Harding* for appellant, cited 13 W. Va. 822, P't 3, Syll; 2 Gratt. 1; 3 W. Va. 177.

*Dayton & Dayton* for appellee cited:
2 Jarm. Wills (5 Am. Big. Ed.) 13, 14; 19 Atl. Rep. 242; 1 Jarm. Wills. 880, 881; 3 Leigh 450; 13 Gratt. 301; 15 Gratt. 423; Code (1849) c. 77, s. 8; 3 W. Va. 174; 7 W. Va. 79; 29 W. Va. 119; Id. 169; 9 W. Va. 124; 17 W. Va. 43; 23 W. Va. 183.

BRANNON, JUDGE:

Appeal from the Circuit Court of Randolph county in the case of Hester A. Wilmoth against Troy Wilmoth and others.

Baxter Wilmoth, of Randolph county, made his will, as follows: "I, Baxter Wilmoth, of the county of Randolph and state of West Virginia, being of sound mind and disposing memory, and knowing that it is appointed unto all men once to die, do make and publish this my last will and testament in form and manner as follows: *First.* I give, bequeath, and devise my estate, both real and personal, as follows, to wit: I will to my beloved wife, Hester A. Wilmoth, all my real estate, to be controlled and used by her as she may wish, until my youngest child arrives

at the age of twenty one years. When my youngest child arrives at the age of twenty one years, then my two children are to have and to own all my real estate except that portion thereof that my wife is entitled to as my widow. I further provide that, if my wife should marry again, then her right to all my real estate should cease from the date of said marriage, except a widow's thirds. I further provide that my two children shall share equal in my real estate. *Second.* I give and bequeath to my beloved wife, Hester A. Wilmoth, all my personal property (viz., horses, cattle, money, bonds, farming utensils, house-hold and kitchen furniture, and everything else classed as personal property) to be hers absolutely, to be used by her in any way or manner she may wish for her own comfort and for the comfort and benefit of our two children, Troy Wilmoth and Grace Wilmoth. *Third.* I direct in this my last will and testament that, if it be necessary for the support of my wife and children that the executrix of this my last will and testament shall be authorized to sell and convey that portion of my real estate known as the 'Christopher N. Schoonover Land' on the waters of Cherry Tree fork, a branch of Leading creek, adjoining the lands of Hurry & Schoonover and others, said tract containing one hundred and sixty eight and a half acres. Also one other tract of land on the waters of Cheat river, on the west side of said river, known as the 'John Wyatt Land,' adjoining the lands of Jacob Isner and others, containing about forty five acres. *Fourth.* I will and direct that in case of the death of my wife, and also the death of my two children without any heirs, that my estate, both real and personal, be placed under the control of the Western Virginia Annual Conference of the M. E. Church 'South,' to be used by them for the support of the superannuated and worn-out preachers of said church and their wives. *Fifth.* I constitute and appoint my beloved wife, Hester A. Wilmoth, executrix of this my last will and testament, with a request that Andrew Fansler assist her as such executrix, when requested by her to do so, on such terms as may be agreed upon by herself and said Fansler, hereby revoking all former wills by me heretofore made. Witness

the following signature and seal this 8th day of Jan. in the year 1889.   BAXTER WILMOTH."

The will was proven before the clerk of the County Court, and the widow asked the clerk to grant her letters of administration as executrix under the will, and he, being doubtful whether the plaintiff was entitled to the personal estate absolutely or only contingently, and whether the second and fourth clauses conflict, and whether the fourth clause limits the right of Hester A. Wilmoth to take the personal property absolutely, required her to give bond as executrix in the penalty of four thousand dollars, which she was unable to do; and thereupon she filed her bill in chancery in the Circuit Court of Randolph against Troy and Grace Wilmoth, the two infant children of herself and her husband, and James D. Wilson, the clerk, setting up the facts aforesaid, and also that the personal estate amounts to two thousand dollars, and that the estate owed no debts beyoud fifty dollars in the aggregate, and charging that if the fourth clause was in conflict with the second it was void for uncertainty, and she was entitled to all the personalty absolutely, and entitled to qualify as executrix in a nominal bond, and that to require a greater bond than to cover the small indebtedness and charges of administration was oppressive upon her; and she asked the court to give judicial construction to the will, and that she be declared entitled to the personal estate absolutely, and that the clerk be directed to qualify her as executrix, with a bond of nominal penalty.

The court pronounced a decree to the effect that Hester A. Wilmoth is entitled, under the second clause of the will, to the personal estate absolutely, and that the fourth clause in no wise limits her right to take and hold such personal estate absolutely, and requiring the clerk to qualify her as executrix, with a bond of five hundred dollars. From this decree Stark A. Rowan, guardian *ad litem* of the infant children, appealed to this Court.

Take the second clause of this will. It indicates by strong language an intent to vest an absolute title in the wife to the personalty by the words, "to be hers absolutely, to be used by her in any way or manner she may wish." If

these words stood alone no one would raise a question; but the words finishing the sentence, "for her own comfort, and for the comfort and benefit of our two children," raise the question whether her right is unlimited, or in trust for the comfort and benefit of her children as well as her own. I think the testator did not intend to limit the wife's right by raising any trust for the children; for by the same clause he had just given her the personalty, to be hers absolutely, to be used by her in any manner she might wish, thus vesting an absolute estate, and making her sole arbiter of it; and by the words, "to be used by her in any way or manner she may wish, for her own comfort and for the comfort and benefit of our two children," he only spoke the motive for the bequest, or at most only conveyed to his wife the motive of the bequest, as confiding in her, that she would use it for the purpose designated. He called her in the will, several times, his "beloved wife," and gave her in the first clause his realty, to be controlled and used by her as she wished until his children should come of age; and all this shows that he had full confidence that she would remember and care for the common fruit of their marriage, and, if we give the language the strongest meaning contended for by the appellants, did not intend to limit her right to the personality by creating a trust, which trust itself might cramp the powers of the mother and prevent her from using the personalty for the comfort of herself and children, the very object of giving the personalty to her. And the fact, that the will gave her use and control of the land only until the majority of the younger child, while there is no limitation as to the personalty, evinces an intent to discriminate between the two kinds of property. Several adjudged cases repel the contention that the widow took anything but an absolute estate in the personalty.

In *Shermer* v. *Shermer*, 1 Wash. (Va.) 266, a devise of the use and profits of real and personal estate to the wife during life, and, after that ended, to be divided equally between whomsoever the wife should think proper to make her heir or heirs and testator's brother, and she died without making any disposition or appointment of her part, was held by the Virginia Court of Appeals to give her re-

lations half of the proceeds of lands sold under the will after her death.

In *May* v. *Joynes,* 20 Gratt. 692, a will gave to the wife, "subject to the provisions hereafter declared, the whole of my estate real and personal, * * * to have during her natural life, but with full power to make sale of any part of the said estate, and to convey absolute title to the purchasers, and use the purchase money for investment or any . purpose that she pleases, with only this restriction : that whatever remains at her death shall, after paying any debts she may owe, or any legacies she may leave, be divided as follows ;" then limitations to children and grandchildren ; and it was held that she took absolute title to both realty and personalty, and the limitation over of what remained at her death was inconsistent with and repugnant to such absolute estate, and failed for uncertainty.

In *Missionary Society* v. *Calvert,* 32 Gratt. 357, a will directed property to be sold, and proceeds invested, and the wife to receive interest ; but so long as she remained a widow she was at liberty to receive such part as she might choose, and appropriate it as she believed right; and directed that all such part as she should not appropriate should go to the Missionary Society of the Methodist Episcopal Church, incorporated *etc.* The Virginia court held that the wife took the absolute estate, and the society did not get it.

In *Carr* v. *Effinger,* 78 Va. 197, there was a gift to the wife of personalty to be invested, and out of the interest to pay testator's mother one hundred dollars annually, and remainder of such interest to be used by his wife for her own benefit, and gave her stock to sell and invest in bonds or loan out at interest for her benefit, and at her death what bonds she may not have used he gave to two sisters. It was held that the wife took an absolute estate.

In *Cole* v. *Cole,* 79 Va. 251, the devise was : "I give to my wife all my estate, during her lifetime, and, at her death, half of the real estate and half of the personal estate that may be on hands, to do with as she may see proper, and the other half of my real estate and personal property to go to the heirs of my brothers." It was held that she

took at least half of the personalty absolutely, and the limitation over was repugnant and void. See Lomax. Dig. 116, 288, 309; *Riddick* v. *Cohoon*, 4 Rand. (Va.) 547.

In *Milhollen* v. *Rice*, 13 W. Va. 519, it is recognized as a settled rule, that, if a testator give property to a person to use or dispose of at pleasure—that is, to consume or spend it—such devisee or legatee has the fee-simple or absolute property, though his interest be called a "life-estate," and though there be a provision that what may remain of the property at the death of the devisee or legatee is given to another.

These cases go upon the settled rule in the construction of wills, that an absolute power of disposal by the first taker renders a subsequent limitation over repugnant and void. But it is hardly necessary to summon these cases here, for in them there were limitations over to other persons after the death of the first taker, whereas here no one is indicated as a second taker after the widow's death; but they are cited to justify the statement that if, in those instances, the first taker had an absolute estate, much more would Mrs. Wilmoth have an absolute property here.

But another line of thought occurs. It may be said that though no one is indicated as a second taker, yet the wife took the property, not for her sole benefit, but in trust for herself and children; thus classifying it under the head of "implied trusts," or trusts created by precatory words in a will though it is really a weaker case than a trust from precatory words since there are no precatory words. I quote Perry on Trusts, as follows:

"Sec. 117. There is another variety of cases where trusts are sometimes implied from words used, though an express trust is not declared; as, where property is given to a parent, or other person standing in the relation of parent, and some directions or expressions are used in regard to the maintenance of his family or children. The question to be decided in this class of cases is, as in others, did the settler intend to create a trust, and impose an obligation, or did he merely state incidentally the motive which led to an absolute gift? In the following cases a trust was clearly implied: Where property was given that he may dispose thereof for the bene-

fit of himself and children ; or for his own use and benefit and the maintenance and education of his children; or for the maintenance of himself and family ; or 'for the purpose of raising, clothing, and educating' the children of the legatee; or, 'at the disposal of the legatee, for herself and her children ;' or 'all overplus towards her support and her family ;' or to 'A., for the educating and advancing in life her children.'"

"Sec. 119. But no trust is implied where the words simply state the motive leading to the gift, as where the gift is to a person 'to enable him to maintain his children,' or an absolute gift is made and the motive stated 'that he may support himself and children,' or a gift absolutely for her own use and benefit, 'having full confidence in her sufficient and judicious provision for the children.' When a testator gave to his wife 'the use, benefit, and profits of his real estate for life, and all his personal estate absolutely, having full confidence that she will leave the surplus to be divided justly among my children,' it was held that the widow took the personal estate absolutely, subject to no trust, and that the word 'surplus' meant what was left unconsumed or undisposed of by her. And it may be added that the mere expression of a purpose for which a gift is made does not render the purpose obligatory."

In *Bain & Bro.* v. *Buff,* 76 Va. 371, a legacy to a daughter "for the sole and separate use of herself and child or children" was held not to give any estate to the children, but to indicate the motive of the gift to the mother. As pertinent to this point see *Wallace* v. *Dold,* 3 Leigh 258; *Stinson* v. *Day,* 1 Rob. 435; *Penn* v. *Whitehead,* 17 Gratt. 503; *Leake* v. *Benson,* 29 Gratt. 153.

Where it is doubtful whether a precatory trust was intended, the leaning is against it. Mere expressions of kindness towards third parties, for whom a trust is claimed, or appeal to the liberality of the donee on their behalf, is not enough to create a precatory trust, and make dubious words qualify the legatee's interest. Nor do expressions which *per se* might amount to a trust have that effect when so accompanied by other words that the will declares or implies on the whole a contrary intent. Schouler, Wills,

§ 595. Schouler in note 3 to section 595, says: "Some cases seem reluctant to uphold a widow's absolute discretion and control of the property as against the testator's own children; but other precedents treat her with the usual favor, where doubtful precatory words accompany an absolute gift in her favor;" and that, "so far as the children concerned are all her own, and not step-children, we may well accede to the latter view." And, as we are seeking the intention of the father as he was nearing the boundary of earthly life, I ask, to whom would he more probably—to whom could he more safely and confidently—commit his estate for the comfort and benefit of his two little daughters of one and three years' age than to her whom he called in this solemn act his beloved wife, the mother of his children? She, as well as they, would need comfort. He simply intended to give, and did give, his wife his personalty absolutely, and his realty for a time, having the utmost confidence that without any injunction of imperative character, or even mild precatory words, as to the care of his children, she would, at the bidding of natural love and affection, do right by their children.

The case cited for appellants (*Harrisons* v. *Harrison*, 2 Gratt. 1) is not controlling, not potential, in this case. That will said: "In the utmost confidence in my wife, I leave to her all my worldly goods, to sell or keep for distribution amongst our dear children, as she may think proper. My whole estate, real and personal, are left in fee-simple to her, only requesting her to make an equal distribution amongst our heirs, and desiring her to do for some of my faithful servants whatever she may think will most conduce to their welfare without regard to the interest of my heirs." This was held very properly a precatory trust, not an absolute estate in the wife, because here were strong precatory words, and words clearly indicating that he did not mean to give her absolutely, but to give something for others; and these precatory words were so strong and repeated that nobody could help seeing that the intent was not to give her absolutely, unfettered with a trust. The intent clearly manifested itself on the face of the will. Intent is the polar star in construing wills. Adjudged cases count little;

for, though wills are innumerable, no two are just alike. We are to hold the will up by its four corners before us, read it all, and see what the predominant idea of the testator was, and that ought to and must prevail against all doubtful or conflicting provisions which might of themselves defeat it. Schouler, Wills, § 476. The predominant idea was clear in the Harrison will, as it is in the Wilmoth will.

After writing to this point, I meet with the Virginia case of *Rhett* v. *Mason*, 18 Gratt. 541, which confirms my view above expressed. There the will gave the wife all the estate real and personal, "for her maintenance and support, and for the maintenance and support of our children, during her life and widowhood." That case bears a close affinity to this, though its language is a little stronger to create a trust against the widow ; and the court held that she was entitled absolutely during widowhood to the whole profits of the estate, and there was no trust for the children. So I dismiss the second clause of the will in hand, holding that it vests the entire personal estate in Mrs. Wilmoth absolutely and without any trust for her children further than it may call on her conscience. There may be a trust in the forum of conscience, but not in the forum of municipal law.

Take next the fourth clause of the will. Does it qualify or detract from the widow's absolute right under the second clause ? The fourth clause is : "I will and direct that in case of the death of my wife, and also the death of my two children without any heirs, that my estate, both real and personal, be placed under the control of the Western Virginia Annual Conference of the M. E. Church South" *etc.* These words, "in case of the death of" a devisee or legatee, as a general rule have a technical legal meaning in wills, as will be seen in the opinion written by Judge LUCAS in *Ewing* v. *Winters, supra p.* 23 (11 S. E. Rep. 718) as he says : "Standing alone, as a qualification upon a bequest made in absolute terms, they are generally construed to mean in case of the death of the donee before that of the testator, and to have been inserted to prevent the lapsing of the legacy." 2 Jarm. Wills, 752, states the rule :

"Hence it has become an established rule that where the bequest is simply to A., and, in case of his death, or if he die, to B., A., surviving the testator, takes absolutely." Likewise 2 Redf. Wills, 260 ; Schouler, Wills, § 565. ·

If we apply this rule in this case it will declare that Mrs. Wilmoth took an absolute estate. But, outside of that rule, I feel sure that the testator, Wilmoth, meant that his wife and children and their heirs should enjoy his estate, they being the first objects of his bounty ; but should his wife and children die without heirs, then, but not till then, should his church come in as second in his affection. He did not mean to limit the absolute estate in the personalty already given his wife, but simply that, if she had no heirs, anything left should go to the church. Would you qualify the fee in the land vested by the will in the daughters by this clause ? I think not. Then why would it so operate upon his widow ? But there is a legal reason why this limitation over to the conference can not derogate from her estate, and that is that such limitation is void itself, for the reason that the conference is not an incorporated, but a religious, body, and has no capacity to take, and, even if it had been the design of the will to qualify Mrs. Wilmoth's estate, the provision intended to do so being a nullity would leave her rights standing unshackled from such limitation.

It certainly is useless and inappropriate to prolong this opinion by any further reference to this feature of the case in view of the elaborate discussions which have so often taken place in the courts of appeals of Virginia and this state upon this subject. I will simply collate, for the benefit of those who may investigate this interesting subject, and as authority for our holding as to this point of the cause, the decided cases bearing on it: *Gallego* v. *Attorney General*, 3 Leigh, 450 ; *Brooke* v. *Shacklett*, 13 Gratt. 301 ; *Seaburn* v. *Seaburn*, 15 Gratt. 423 ; *Janey* v. *Latane*, 4 Leigh, 327 ; *Com.* v. *Levy*, 23 Gratt. 21 ; *Kelley* v. *Love*, 20 Gratt. 124 ; *Carpenter* v. *Miller*, 3 W. Va. 174 ; *Bible Society* v. *Pendleton*, 7 W. Va. 79 ; *Knox* v. *Knox*, 9 W. Va. 124 ; *Brown* v. *Caldwell*, 23 W. Va. 187 ; *Carskadon* v. *Torreyson*, 17 W. Va. 43 ; *Mong* v. *Roush*, 29 W. Va. 119 ; *Wilson* v.

*Perry*, 29 W. Va. 169 (1 S. E. Rep. 302); *Kain* v. *Gibboney*, 101, U. S. 362.   Therefore we think the fourth clause does not affect Mrs. Wilmoth's rights under the second clause.   Concurring with the Circuit Court in the construction of the will, we affirm the decree as to that aspect of the case.

But it is assigned as error that the Circuit Court has directed the clerk to qualify the executrix in a bond of five hundred dollars.   It is urged that, as the infants have no interest in the personalty, they are not aggrieved by this feature of the decree.   True ; but this omits the fact that the will authorizes the executrix in a contingency specified to sell two tracts of land, given the children by the will; and in view of section 6, c. 85, of the Code, providing as to bonds where a will authorizes an executor to sell land, we must say that the children are interested in this feature of the decree, and we must therefore consider it.

And here I have simply to say that the constitution vests in County Courts jurisdiction in all matters of probate and appointment and qualification of personal representatives, and the statute law, so far as I see, gives such jurisdiction to that court and its clerk, giving to the Circuit Court jurisdiction by a proceeding of law called an appeal.   We have not been shown how the Circuit Court can exercise jurisdiction depriving the County Court and its clerk of powers given them.   The Circuit Court has jurisdiction to construe the will; and generally, when there is jurisdiction for one purpose, it will decree on the whole case; but this rule ought not to go to the extent of exercising a jurisdiction it does not possess, and cause it to invade another court. Therefore this feature of the decree is erroneous.   The matter of bond and its penalty must be left to the clerk and County Court without any indications from us as to what bond should be required.   While a court of equity has jurisdiction to construe a will upon a bill filed in a Circuit Court for that purpose, the court can not go further, and direct a clerk of a County Court to qualify the executrix in a bond in a particular penalty, though the bill so asks, on the ground that the clerk has demanded a bond in too large a penalty, as such decree would oust the County

Court and its clerk of their lawful powers. Even were this an appeal to the Circuit Court from the action of the County Court in the matter of the qualification of the executrix, it seems the Circuit Court would not have right to fix the bond, according to *Atkinson* v. *Christian*, 3 Gratt. 448.

We reverse so much of the decree as directs that the clerk qualify the executrix with bond in the penalty of five hundred dollars, but in all other respects the decree is affirmed, without adjudication as to costs.

AFFIRMED IN PART. REVERSED IN PART.