# CHARLESTON.

LESAGE *v.* LESAGE.          52 323<br>60 288

Submitted June 18, 1902. Decided December 20, 1902.

1. SYLLABUS APPROVED.
    Clause V, Point 1, Syl. in case of *Hinchman* v. *Ballard*, 7 W. Va. 152, approved. (p. 329).

2. TENANTS IN COMMON—*Jurisdiction.*
    Tenants in common, joint tenants and coparceners are compellable to make partition, under chapter 79, Code, and circuit courts have jurisdiction for that purpose. (p. 325).

3.   Will—*Estate—Devise.*

> F. J. L. made his will containing the following clause:   "I also give to my wife the use of the home place, which was purchased of the James Knight estate, but the same is to be a home for any of my children that may desire to live there," and provided that at the death of his wife the said home place "Shall go to and be the property of my three children," naming them. *Held:* That the home place was devised to the wife for her use during her life and that the words "But the same is to be a home for any of my children that may desire to live there" create no estate in the children or trust for their use, nor do they constitute any limitation upon the estate vested in the wife. (p. 324).

Appeal from Circuit Court, Cabell County.

Bill by Lillie B. LeSage against Francis I. LeSage and others. Decree for plaintiff. Defendants appeal.

*Affirmed.*

Northcott & Perry, for appellants.

Geo. J. McComas, for appellee.

McWhorter, Judge:

Lillie B. LeSage filed her bill in the circuit court of Cabell County against F. I. LeSage, J. C. LeSage, Louise Lusher, Albert Knight, Wilson Knight, Eustace Knight and Maude Knight, heirs-at-law of Josephine Knight, deceased, and the unknown heirs of Fanny Jefferson, alleging that on the — day of——, 189—, F. J. LeSage departed this life leaving the said defendants interested in the estate of which he died seized. Soon after his death his will was admitted to probate, a copy of which is said to be exhibited with the bill, and alleges that among other devises the will contained the following clause: "I also give to my wife the use of the home place, which was purchased of the James Knight estate, but the same is to be a home for any of my children that may desire to live there;" and further provides that at the death of the plaintiff said home place should "Go to and be the property of my three children, Josephine Knight, Julia Custer LeSage, Francis Erwin Le-Sage and the heirs of Fannie Jefferson;" that plaintiff remained on said home place for a considerable time after the death of her husband and the probate of the will and being so

in possession of the home place and of the residence thereon she on the 14th of October, 1898, rented the same to F. I. LeSage, who took possession under said lease and remained in possession until January 18, 1900, when plaintiff received notice from him to the effect that he did not desire to rent from her her life interest in said home place for the year 1901, reciting in his notice that as he owned and controlled one-third of the farm he would occupy the house, possession of which he obtained under said lease; that the decedent, prior to his death conveyed or caused to be conveyed to his daughters, Louise Lusher and Lillie M. Wigal, an undivided one-third interest in said home place and the property devised to plaintiff under the will only embraced the remaining undivided two-thirds thereof; that the defendant Francis Erwin LeSage was and had been married some time and had a family then occupying said residence and refused to deliver possession or to allow her to reside therein; that the relations between F. I. LeSage and his family and this plaintiff and Ethel LeSage, then 20 years of age, the youngest and unmarried daughter of F. J. LeSage, were entirely unpleasant and that they could not peaccably and probably not safely occupy the same house as a residence; that it was a strained and improper construction of the will to hold that any and all of said testator's children and their families could enter into said residence property at any and all times and occupy the same as a home, but that a fair and proper construction would be that said residence should remain a home for such children of the deceased as had no other family ties and desired to remain under the rooftree; that under the will plaintiff was entitled to two-thirds of said home tract during her natural life, and the same being undivided it was impossible for her to tell just what land she could rent and also impossible to get an agreement from all persons interested; that the defendant Louise Lusher was still the owner of one-sixth of said tract of land, and that the one-sixth that had theretofore been conveyed to Lillie M. Wigal had been by her and her husband conveyed to the defendant Francis Erwin LeSage; that plaintiff was entitled to have said land so partitioned as to enable her to take proper possession of and rent out her portion and that she was entitled to have the residence included within such portion as might be set apart to her, and to be in quiet possession

thereof, and prayed for a construction of said will that her rights and privileges thereunder be defined and determined; that she be given peaceable possession of said residence for the use of herself and unmarried children of F. J. LeSage as a home; that two-thirds of said home tract be set apart to her with said residence for use to her during her life, as provided in the will and that if immediate possession of said home could not be decreed her that a receiver be appointed to rent said property pending this cause and for general relief.

The defendant, F. I. LeSage filed his demurrer and answer to said bill admitting that it was true that F. J. LeSage died on the 5th day of July, 1897, leaving interested in his estate the parties mentioned in the bill and admitting the clause in said will as being correctly stated in said bill; that at the time of making said will and the death of the testator, Sidney E. LeSage, then about twenty years of age was the only unmarried heir of said F. J. LeSage; that plaintiff was respondent's step-mother and the third wife of his father, that he and his step-mother for about ten years last preceeding his father's death had been on bad and disagreeable terms until a few days before his death, when at his request they had agreed to be friendly; that it was true that he took possession of the house partly by virtue of the lease from plaintiff; that by said lease plaintiff reserved to herself another of the houses on the home place on which there were several, as a home; that since moving into the house respondent had improved and repaired the same at large expense to himself, and filed an itemized account of such expense of one hundred and forty-two dollars and sixty-three cents, averring that respondent was the owner in fee of all interests in said real estate mentioned in the bill except plaintiff's estate in two-thirds of the same and had bought the said life estate except one-sixth thereof; that plaintiff was then and had been ever since the surrender of the lease as far as respondent was concerned in possession of more than two-thirds of said place and that he had never interfered with her leasing and controlling same and that plaintiff had always gotten more than her portion of the proceeds of the place, such as fruits and crops of all kinds raised upon the real estate; that it would be a proper construction of said will to hold that any of the children of the decedent should have a residence on part

of the home place conveyed by said will; that he had always been willing that plaintiff should have and enjoy undisputed peaceable possession of her lawful interest in said property and had done everything to so arrange matters and had even more than once proposed to plaintiff that they select disinterested parties and allow them to place a valuation upon plaintiff's interest and that respondent would pay to plaintiff the amount so fixed, and that she had repeatedly refused to make any amicable arrangement of the matter, and had annoyed respondent in many ways, even suing him for settlement as executor long before the time allowed by law for settlement, and prayed that the court construe the will and that his rights and privileges thereunder be defined and declared and that he be decreed the use of the home in which he then lived, and which he had repaired and improved at great expense to himself, as a home for himself as long as he might desire to live there, and for general relief.

Depositions were taken and filed in the cause, and on the 18th day of July, 1901, the cause was heard upon the bill and separate answer of F. I. LeSage and general replication thereto and the depositions taken and filed in the cause by both plaintiff and defendant F. I. LeSage, when the court ascertained that plaintiff was entitled to the residence under the provisions of the will devising to her two-thirds of the home place for her life and to have said home place partitioned so as to set apart two-thirds to her, including said residence, and the court appointed commissioners to go upon the land described as the home place and lay off by proper metes and bounds two-thirds, having regard to both quantity and value, so as to include said residence and curtilage to be by her used, and occupied for the term of her natural life and they shall so set apart the remaining one-third of said land owned by the said F. I. LeSage as to include one of the other residences on said home farm and report their proceedings to the court; and on motion of plaintiff her bill was dismissed as to all the defendants therein except F. I. LeSage and it was considered by the court that the opinion and decree of partition should affect only the interest of plaintiff and said F. I. LeSage. The commissioners so appointed to make partition made their report, giving to the plaintiff the possession of forty-five acres known in the report

as "tract No. 1," and to F. I. LeSage ninety acres known as "tract No. 2," and on the 5th day of August the cause again came on to be heard and there being no objection or exception taken to said report the same was confirmed and spread upon the record of the court and a decree entered giving to the plaintiff and the defendant the possession of the respective tracts assigned to them, being particularly described by metes and bounds, it being provided in said decree that "This decree is in no way intended to affect any interest that any one may have in the remainder in said two-thirds interest so assigned to Lillie B. LeSage, after the expiration of her life estate." From which decree the defendant F. I. LeSage appealed and says, "It was error for the court to decree as it did without passing upon the demurrer of the defendants to the plaintiff's bill (such demurrer was in fact overruled but this does not appear upon the record and the court erred in so ruling) because the plaintiff clearly had an adequate remedy at law under the existing conditions;" and that it was error to decree as it did construing the will so as to deprive appellant of his right to use the property as a home and to disregard in the decree all the express provisions of the will giving appellant a right to a home in the property.

As to the first error assigned the court having proceeded to adjudicate the principles considered in favor of plaintiff without acting *pro forma* upon the demurrer it will be considered that the court in rendering such decree, considered the sufficiency of the bill and substantially overruled the demurrer thereto. *Henchman* v. *Ballard,* 7 W. Va. 152. The court had jurisdiction for the purpose of partition, the plaintiff being entitled to the possession under the provisions of the will of her husband during her life to the one undivided two-thirds of said land and the defendant F. I. LeSage to the one undivided one-third, either party under the statute, chapter 79, Code, being entitled to come into a court of equity to have a partition thereof. It is true plaintiff had adequate remedy at law to obtain the possession of the house occupied by the defendant under the lease taken by him from plaintiff and which lease he had surrendered, but being entitled to sue for partition, the recovery of the possession of the house was a mere incident. It is insisted that the demurrer should have been sustained because the

two exhibits, viz: the will and the notice given by the defendant to terminate the lease made by the plaintiff to the defendant, referred to in the bill were not produced and really filed in the cause. It does not appear that their production was demanded and the bill quotes the clause of the will which is asked to be construed while the answer admits the correctness of the quotation in the bill and also makes the same prayer in regard to the construction thereof as that contained in the bill. In *Chapman* v. *R. R. Co.*, 18 W. Va. 184, (Syl. pt. 12), it is held: "Where the bill makes reference to important exhibits, and bases allegations thereon, and the defendant answers and does not deny the existence of the exhibits, nor contest their validity, and they are not produced, the defendant can make no objection in the appellate court to their non-production." In *Miller* v. *Hare*, 43 W. Va. 647, (Syl. pt. 1), it is held: "A general demurrer to a bill in equity is properly overruled if the bill as a whole states facts which entitle the plaintiff to relief." There is no part of the will asked to be construed by either the bill or the answer, except the words contained in the clause which gives the use of the home place to the plaintiff, which words, are: "But the same is to be a home for any of my children that may desire to live there." And both parties so far as the record discloses submit to the court the question of the construction of these words only, without reference to any other part of the will, and indeed it would seem that no other part of the will could have any bearing upon the question submitted. Appellant cites *Hayes* v. *Freshwater*, 47 W. Va. 217, where it is held: "The cardinal rule for the construction of a will is to ascertain the intent of the testator from the entire instrument." This cannot apply in a case where the construction of specific words alone are asked to be construed as affecting a particular clause only, and the whole will is not presented for construction. The first part of the clause "I also give to my wife the use of the home place which was purchased of the James Knight estate," is a clear and unambiguous devise or gift and the following words are predatory, they bestow no estate or right upon his children that could be enforced nor do they constitute any limitation upon the estate vested in the wife. It was clearly the purpose of the testator to provide a home for his wife and in unambiguous terms gives her the use of the undivided two-

thirds of said property and this is not controverted in the answer; yet it is claimed by appellant that he or any other one of the children of the testator may not only themselves go upon and have a home at said home place but have a right to take their families and residue upon the premises to which the plaintiff is entitled under the will. If this position be correct then the plaintiff takes nothing under the will of which she may not be ousted by the children of the decedent or any or all of them. In 29 A. & E. E. L. 369, it is said: "It has been a rule of construction that a clear gift is not to be cut down by any subsequent provisions unless the latter is equally clear; but perhaps the better statement is that a clear gift is not to be cut down by anything which does not with reasonable certainty indicate an intention to cut it down. Whichever form be adopted the plain intention of the testator and not the comparative lucidity of the two parts of the will is to be regarded," and many cases there cited. And in *Boyle* v. *Boyle,* 152 Pa. St. 108, it is held: "Mere precatory words or words of command or words of explanation are not enough to establish an intention that is not to be gathered from a consideration of the operative words upon the face of a will." In the case of *Wilmoth* v. *Wilmoth,* 34 W. Va. 426, a provision in the will, "I give and bequeath to my beloved wife, Hester A. Wilmoth, all my personal property * * * to be hers absolutely, to be used by her in any way or manner she may wish for her own comfort and for the comfort and benefit of our two children, Troy Wilmoth and Grace Wilmoth;" it was held that this clause gave the wife an absolute estate and that there was no implied or precatory trust thereby created for the children. At page 433, JUDGE BRANNON, in delivering the opinion of the court says: "Where it is doubtful whether a precatory trust was intended the leaning is against it. Mere expressions of kindness towards third parties for whom a trust is claimed or appeal to the liberality of the donee on their behalf is not enough to create a precatory trust and make dubious words qualify the legatee's interest." The clear intention of the testator was to provide for his wife the use of the two-thirds of the home place, and to give the words asked to be construed, the force and effect that must be given them by the construction asked on the part of the appellant would put it in the power of the children of said

testator to render the said provision made for the wife nugatory and wholly without effect. The partition made by the commissioners is evidently equitable and fair as neither party objected or excepted to it and it was confirmed without objection.

For the reasons stated herein I see no error in the decree, and the same is affirmed.

*Affirmed.*