VIRGIL O. SANDS *v.* VAIL F. SANDS *et al.*

(No. 9069)

Submitted October 8, 1940. Decided December 14, 1940.

*Hines & Davis,* for appellants.
*G. C. Belknap* and *E. O. Berry,* for appellee.

KENNA, JUDGE:

The decree complained of was entered in the Circuit Court of Braxton County in a proceeding brought by Virgil O. Sands against Vail F. Sands and others for the purpose of construing the will of Marcellus C. Sands, who died on the thirteenth day of March, 1937. The testator's will was executed on January 26, 1937, by the testator's affixing his mark to a typewritten paper prepared by an attorney at law under his direction. Virgil O. Sands and Vail F. Sands are the testator's two sons, his only descendants and the ultimate devisees of all of his real estate. The testator intended to divide the entire boundary upon

which his dwelling was located between his two sons, leaving his wife, Dolly V. Sands, an estate in the interest of Virgil O. Sands to be held and enjoyed as long as she should remain his widow. The difficulty arises in applying the descriptions contained in paragraph four of the will, which reads as follows:

> "I will and devise to my two sons the several contiguous tracts of land constituting my home farm to be divided by a line beginning at a stake on top of what is known as the Capon Knob, a corner to the A. T. Petry and Henry Gerwig lands and running in a northeast direction to a hickory in edge of field near where sled road starts off the mountain, and then in an *esterly* direction to the corner of the W. S. Teter lot on the bank of Middle Fork of Cedar Creek, the said Virgil O. Sands to have all the land lying on the northwestern side of said line and the said Vail F. Sands to have all on the southeastern side thereof."

There is no disagreement concerning the location of the division line marked by the three corners named in the will, the first on Capon Knob, the second a hickory near where sled road starts off mountain and the third the common corner with the W. S. Teter lot on Middle Fork of Cedar Creek. However, the division line is located by applying the principle that known corners control over distance and direction because the hickory at the head of the sled road lies in a northwesterly direction, and not northeasterly, from Capon Knob, the testator plainly having made the mistake of reversing directions between east and west. There is no dispute up to this point. The difference lies in the fact that the testator's dwelling and the admittedly better part of his farm lies southwest of the division line and contains three hundred thirty-nine and one-half acres, while the boundary which lies to the northeast and can be described comparatively as hill land, contains two hundred twenty-nine and one-half acres. No part of the main boundary lies either to the northwest or southeast of the dividing line.

The trial chancellor, after the taking of testimony, entered a decree allotting the testator's dwelling and the three hundred and thirty-nine and one-half acre tract to Virgil O. Sands and the remaining two hundred twenty-nine and one-half acres to Vail, assessing costs against testator's widow, who had remarried and who takes the position that she was not a party in interest to the controversy involving the construction of the will and for that reason should not be held accountable for costs. There is no dispute as to boundary, and the testator's purpose to devise his farm to his two boys. It is admitted that in locating the division line the testator became confused as to the points of the compass, certainly as between east and west, and while an accurate description is, of course, much to be desired, a testamentary disposition as distinguished from a deed in this respect is to be construed with the end in view of carrying out the testator's intention as the primary basis of construction. Furthermore, the testator's intention does not have to be conclusively shown. It is to be arrived at, if resting upon extraneous matters and surrounding facts and circumstances, by weighing the testimony. We are of the opinion that the language of the will before us, coupled with the proof contained in the record, shows that the solution of this controversy depends upon the interpretation of a latent ambiguity. That being so, a rough summary of the testimony is essential.

The plaintiff's testimony is grounded upon the fact that Vail F. Sands was employed by the United States Post Office Department with headquarters at Columbus, Ohio, or Pittsburgh, Pennsylvania, where he had resided for twenty years, while Virgil had remained on the home place and by his labor had cultivated it and cared for his mother and father to a very large extent; that his father had bought the northeastern part of the home farm whereon he resided in a separate dwelling for the very purpose of moving him (Virgil, the farmer as distinguished from the post office inspector) onto the same tract in order that Virgil could care for him; and that it was his

father's purpose to devise the better farming boundary, together with the better dwelling and greater acreage, to him, Virgil, equalizing the value between that part and the part left to Vail by charging the former with a conditional life estate in favor of the widow, to continue as long as she remained single. He contends that after the death of his father, a practical construction was placed upon his father's will by his mother's continuing to occupy the dwelling upon the three hundred thirty-nine and one-half acre tract, thus giving effect to her right of possession under her life estate prior to her subsequent marriage, and that both he and Vail acquiesced in that construction by their non-interference with her enjoyment; that the only interest vested in him in that particular boundary could not be asserted until after his mother's life estate terminated upon her marriage, which was followed almost immediately by the institution of this proceeding when it became known to him, Virgil, that his brother Vail contended that his mother's possession of the home place was as his tenant, and that Virgil's possession of the two hundred twenty-nine and one-half acre tract was with his mother's consent.

On the other hand, Vail's contention is that his father purchased the land upon which Virgil lived due to the fact that Virgil's behavior and lack of application made the old gentleman wish to subject him to close scrutiny and parental control; that the life estate vested in his mother was created by his father because his father knew that he, Vail, would permit his mother to occupy the home place without regard to a legal right to do so, and that Virgil's part of the boundary was subjected to his mother's interest in order to prevent Virgil from disposing of the land with the evident expectation that Mrs. Sands would not remarry; that this practical construction was acquiesced in by Virgil who at one time agreed to execute conveyances carrying into effect, an agreement which he repudiated only after the deeds carrying it into effect had been prepared and executed by Vail and wife. Partially executed copies of these deeds are in the record.

Testimony of statements that the testator made prior to the execution of his will declaring that that was his purpose and intention was introduced.

The testimony is in conflict so far as it affects the declaration of intention on the part of the testator.

We are under the impression that there is ample testimony to sustain the trial chancellor's conclusion as to the testator's purpose and intention, coupled, of course, with the natural inferences and deductions to be drawn therefrom. The matter of a mistaken description we regard as being secondary, the testator's intention, to be determined by the weight of the evidence, controlling. We cannot say that we view it as a question free from doubt, but it is to be supposed that the trial chancellor's holding was arrived at in full realization of the questions involved, and perceiving no apparent reason for concluding that his decision constituted error, it must therefore be sustained.

The decree is affirmed.

Mrs. Perrine asks that so far as the final decree assesses costs against her it be modified due to the fact that she claimed no interest in the controversy and any estate that she had in any part of the tract, the division of which was in dispute, had terminated prior to the bringing of this cause. This, of course, is true, but it is equally true that Mrs. Perrine could have filed a separate answer in this proceeding setting up those facts and asking to be dismissed as a defendant in her own right. This she did not do, but preferred to join with Vail Sands in her own right and as executor of her husband's will in answering the bill of complaint. Under these circumstances, we cannot say that the trial chancellor improperly exercised his discretion in awarding costs.

*Affirmed.*

Fox, JUDGE, concurring:

This concurring note is filed following consideration of petition to rehear.

While I had the same doubts as those expressed by Judge Kenna, in his opinion herein, I concurred therein because, while the trial court had stated that most of the testimony considered by us in relation to expressed intent of the testator had been rejected by him, I felt that we were not thereby precluded from considering the same, and that upon consideration of the whole case, with or without such rejected testimony, we could not, in view of the confusion and doubt created thereby, say that the decree appealed from was plainly wrong.

But my concurrence then was, and is now, based mainly on the language of the will, and undisputed and legally established facts, and excludes consideration of the oral testimony which the trial court rejected. M. C. Sands, the testator, clearly designated a line dividing his farm into two parcels, one containing 339 acres, the other 229 acres, and there is no dispute as to its location on the ground. As appears from his will, he thought the line ran in an easterly direction from the well established point of beginning, whereas, in truth, to reach the monuments called for, it was found to run in a westerly direction. If that line had, when laid on the ground, run in an easterly direction, then, necessarily, the tract of 339 acres would have laid northwest of that line, and the 229 acres, so far as it bordered on said line, to the southeast thereof. With the belief that the division line ran easterly, Sands, by his will, devised to Virgil O. Sands the tract which he thought lay on the northwest thereof, containing 339 acres, subject to a conditional life estate therein of Dolly V. Sands, and to Vail F. Sands the tract on the southeast of the line, containing 229 acres. In ascertaining what M. C. Sands meant when he used the descriptive terms "northwestern" and "southeastern" we do not have to go outside of the will to see that they were used in connection with his mistaken belief as to the course of the division line. As he believed the line to run, he used a description which

unquestionably gives the 339 acres to Virgil O. Sands, and the 229 acres to Vail F. Sands. The confusion results from applying these descriptions to the line as it lays on the ground rather than the line which Sands had in mind. In seeking to reach the intent of the testator, we must apply these descriptions to the line which was in his mind when he dictated his will. When we do this the confusion disappears and, in my judgment, the intent of the testator becomes clear.

Judge Riley joins in this note.