LEWIS HEDRICK et al. v. C. S. HEDRICK

(No. 9443)

Submitted April 6, 1943. Decided May 25, 1943.

KENNA, JUDGE, dissenting.

*John A. Lile* and *Mahan, Bacon & White*, for appellant.
*Price & McWhorter* and *S. H. Sharp*, for appellees.

FOX, JUDGE:

This is an appeal from a decree of the Circuit Court of Greenbrier County, entered on the 9th day of March, 1942, in a chancery cause in which Lewis Hedrick, Carmen Hinkle, Helen Cruse and Hazel Robinson, children and heirs apparent of Lena Hedrick, were plaintiffs, and C. S. Hedrick was defendant, which decree, in effect, granted to the plaintiffs the relief prayed for in their bill, and from which decree the defendant appeals.

On the 29th day of September, 1934, L. C. Hedrick executed a will in the following language:

"I, L. C. Hedrick being of sound mind and this being my last will and testiment I hereby will and bequeath unto C. S. Hedrick, my brother the Home Place consisting of 100 acres of land and all of its belongings encluding moneys & etc. and it is my request that the land in Blue Sulphur

District be divided between the Lena Hedrick heirs.

"This the 29th day of Sept. 1934.

L. C. Hedrick."

The will was promptly probated, and L. C. Hedrick took possession of the one hundred acres of land mentioned therein, and has remained in possession thereof to this day. He occupied and used the whole thereof, including the part which, from extraneous evidence, appears to be situate in Blue Sulphur District, made some improvements thereon in the way of fencing and, in the year 1939, sold the timber thereon.

This suit was instituted early in the year 1940. The bill alleges that plaintiffs were the children of Lena Hedrick, and that they were "the Lena Hedrick heirs" referred to in the will quoted above. They allege that under the said will they were entitled to a tract of approximately forty acres of land, a part of the one hundred acres described in the will as the home place, and being that part of the home place which was situate in Blue Sulphur District, and that they were entitled to have the same set aside to them. They also allege that timber from the said tract of forty acres, of a value of $1,350.00, was sold by the defendant in the year 1939, at the inadequate price of $500.00. The prayer of the bill is that the one hundred acres of land mentioned in the will be partitioned, and that the portion thereof located in Blue Sulphur District be assigned to the plaintiffs, and that in case a partition could not be made, the whole tract be sold, and the proceeds of sale equally distributed. The bill also asks for an accounting as to the timber sold.

The defendant demurred to the bill on the general ground that, under the will in question, he took a fee simple estate in the one hundred acres of land, and that no trust in favor of the plaintiffs was created through the request contained in the will; that even though a trust may have been created, the time of executing the same was a matter of law; and that the words "the Lena

Hedrick heirs", contained in the will, should be legally interpreted, by which, we understand, it was claimed that if, at the date of the will, Lena Hedrick was living, she had no heirs and the trust would therefore fail for that reason. Later on May 1, 1940, the plaintiffs filed their amended and supplemental bill. On May 17, the defendant's demurrer to the original bill was overruled and the court then proceeded to pass upon the merits of the case, in deciding the questions raised on the demurrer. This action the court later treated as ill-advised and, on consideration of a bill of review, the order of May 17, to the extent that it did more than overrule the demurrer, was set aside. The defendant then filed his answer to the pleadings of the plaintiffs, in which he denied that the will of L. C. Hedrick created any trust in favor of the plaintiffs, and alleged certain statements on the part of the testator, which, if made, and proper to be considered, tended to show that it was the intention of the testator to devise to the defendant the one hundred acres of land in question as his absolute property. The testimony of the person who wrote the will, and others, as to statements made by the testator at the time of and immediately after the execution of the will, and on other matters assumed to be relevant, appears in the record.

The final decree of the court, in its pertinent particulars, is as follows:

> "The Court is of the opinion that L. C. Hedrick, by his will, in controversy in this suit, devised the forty acres of land in Blue Sulphur District, mentioned therein, to the heirs of Lena Hedrick. And it so appearing, the Court is further of opinion that plaintiffs are the only children of Lena Hedrick and Marsh Hedrick, deceased brother of testator, L. C. Hedrick, and that plaintiffs are the heirs of Lena Hedrick, referred to in said will, it is, therefore, ADJUDGED, ORDERED and DECREED that said plaintiffs, Lewis Hedrick, Carmen Hinkle, Helen Cruise and Hazel Robinson, are the owners of said forty acres of land and are seized with a fee simple title thereto.
>
> "And it appearing that said forty acres of land

lies wholly in Blue Sulphur District of Greenbrier County, West Virginia, and that the remaining sixty acres of the one hundred acres, referred to in said will, lies wholly in Meadow Bluff District of said County, and that said forty and sixty acres are separated by the County road running between them, dividing said districts, the Court is of ·opinion that no reason exists for the appointment of Commissioners to partition said forty acres of land to plaintiffs, as prayed for in their bill, and that they are entitled to immediate possession thereof, it is, therefore, ADJUDGED, ORDERED and DECREED that a writ of possession for said forty acres of land be issued to plaintiffs, by the Clerk of this Court, forthwith".

There is also a personal decree against defendant for $500.00, covering the value of the timber, and it was held that plaintiffs were not entitled to rent for the occupancy of the land in question by defendant since the death of the testator.

The rules pertaining to the construction of wills are well settled in this State. "The fundamental rule in the construction of wills is, that the intention of the testator, if not inconsistent with some established rule of law, must control". 9 Va. and W. Va. Digest, 1101, and cases cited. "A will cannot be construed on mere conjecture as to the intention of the testator". *Coberly* v. *Earle,* 60 W. Va. 295, 54 S. E. 336. Therefore, the intention of the testator must be ascertained, in keeping with certain well defined rules, one of which is that the language of the testator employed in his will, if plain and unambiguous, must be made the basis of its construction, and not what someone supposes the testator may have intended. Another is that the whole of the will should be considered in interpreting certain clauses and parts thereof, and that all provisions thereof must be reconciled, if possible. Furthermore, the law seems to be well settled in this State and in Virginia, that parol declarations of a testator, as to his intention to make a particular bequest or devise, or that he has made such bequest or devise, are not admissible to control the construction of a will, except in

cases where the terms used therein may apply to each of several subjects or persons, in which case evidence may be received as to the subjects or persons intended to be dealt with. *Wootton* v. *Redd,* 12 Gratt. 196; *Skipwith* v. *Cabell,* 19 Gratt. 758; *Roy* v. *Rowzie,* 25 Gratt. 599; *Senger* v. *Senger,* 81 Va. 687, *Coffman* v. *Coffman,* 131 Va. 456, 109 S. E. 454; *French* v. *French,* 14 W. Va. 458. Of course, if a will is ambiguous and that ambiguity is latent, it has always been the law that extraneous evidence may be introduced in an attempt to clarify the intent of the testator as to such ambiguity, not for the purpose of changing any provision of the will, but to reach the real meaning of the testator.

In this case we think the will is clearly ambiguous, and that the ambiguity is latent. In the first place considering the will alone, who can say what was intended by the phrase "the land in Blue Sulphur District". What land? The home place is described as containing one hundred acres, but is not described as to location—from the will we do not know in what district it is located. This one hundred acres was devised to C. S. Hedrick absolutely. The thing which it is contended detracts from this absolute devise is the request that "the land in Blue Sulphur District be divided between the Lena Hedrick heirs". If the one hundred acres is situated in a district other than Blue Sulphur, and the testator owned land in Blue Sulphur, the will would go into effect, C. S. Hedrick would have undisputed title to the one hundred acres, and the request as to the Blue Sulphur District land would be complied with. The true facts, as disclosed by the pleadings and extraneous evidence, are that the testator owned but one tract and that the one hundred acres mentioned in the will, and this one hundred acres lies partly in Meadow Bluff District and partly in Blue Sulphur District, a public highway being the dividing line between the districts, and that part of said land situate in Blue Sulphur District contains approximately forty acres.

Then again who are the Lena Hedrick heirs? Reading

the will, we would assume that Lena Hedrick was deceased, and had left heirs surviving her. The fact seems to be that Lena Hedrick is still living, and, of course, has no heirs; that she is the mother of the plaintiffs; and that plaintiffs are her heirs apparent. These things make the will ambiguous and, in our opinion, fully justify the testimony which presented the true situation to the court. It is obvious that the absolute devise to C. S. Hedrick of the one hundred acres makes more difficult the creation of a trust based on the request later contained in the will. We would have less difficulty if we could say that C. S. Hedrick became vested with absolute title in the one hundred acres and that the request referred to other lands. However, *Eary* v. *Raines,* 73 W. Va. 513, 80 S. E. 806, 807, is authority for the proposition that "A clear gift may be cut down by some other provision in a will, expressed in terms equally unambiguous, showing testator's intention to cut it down".

But this does not solve the most serious question in the case, that is, whether we may consider the declarations of the testator, made immediately before and after the execution of his will. The essence of these declarations is that the request contained in the will was not intended to be binding upon C. S. Hedrick, but that he could do as he wished in regard thereto. Of course, if that statement had been incorporated into the will there would have been no trust created because it would have clearly shown that the testator only intended the same as a recommendation, which the devisee could carry out or ignore. In *Claiborne* v. *Wilson*, 168 Va. 469, 192 S. E. 585, it was held that "The testator's declarations of intention are not admissible to vary the plain language of the will", citing *Coffman's Admr.* v. *Coffman*, 131 Va. 456, 109 S. E. 454; *Widgeon* v. *Widgeon*, 147 Va. 1068, 133 S. E. 353; and *Ward* v. *Ottley*, 166 Va. 639, 186 S. E. 25. The same principle is upheld in *Senger* v. *Senger, supra; Couch* v. *Eastham*, 29 W. Va. 784, 3 S. E. 23; *Wootton* v. *Redd, supra; Reed* v. *Payne*, 3 Call 225, 2 Am. Dec. 550; *Burke* v. *Lee*, 76 Va. 386; *Skipwith* v. *Cabell, supra; French* v. *French, supra.* We

understand these rulings to be based, primarily, on the ground that the long-existing statutory requirement that wills shall be in writing and signed by the testator, or by some one for him (Code, 41-1-3) would be violated, and oral wills established, if declarations of a testator as to his intention were permitted in cases where the written expressions were unambiguous. In *Coffman's Admr.* v. *Coffman, supra,* it is declared that "There is but one situation in which judicial expositor has the right to invoke the aid of direct evidence of the testator's actual intent, such as his declarations of intention, his informal memorandum for his will, his instructions for its preparation and his statements to the scrivener or others as to the meaning of its language; and that is where the words in a will describe well, but equally well, two or more persons or two or more things, and such declarations are offered to show which person or thing was meant by the testator—i.e., by the words in the will used by him. This question has been described as a case of 'equivocation' ". In 9 Va. and W. Va. Digest, 1113, the rule is stated to be that "Parol declarations of testator as to his intention to make a particular bequest, or that he has made such a bequest, cannot be admitted to control the construction of the will, except where the terms used in the will apply indifferently and without ambiguity to each of several subjects or persons, when evidence may be received as to which of the subjects or persons so described was intended by the testator". These authorities force us to the conclusion that the declarations of a testator, not of the type mentioned above, and which only relate to declarations of what he meant by the language employed in his will, cannot be considered in its construction.

We do not think that the request in the will is, in itself, ambiguous, and in interpreting the will we must give to the words employed their common and ordinary meaning, and their legal effect under the decisions of this and other Courts. That there may be ambiguity as to other parts of the will, does not, in our opinion, justify resort to ex-

traneous evidence as to provisions thereof which are not ambiguous.

This brings us to the question whether the language "and it is my request that the land in Blue Sulphur District be divided between the Lena Hedrick heirs" creates a trust in the plaintiffs. It is admitted that the plaintiffs are not the heirs of Lena Hedrick, but that they are heirs apparent. Under the authority of *Stuart* v. *Stuart*, 18 W. Va. 675, plaintiffs are entitled to take under the will, provided a trust is established thereby. That case held, "A devise to the heirs of a living person to take effect immediately is to be interpreted as a devise to the heirs apparent, the word heirs in such case being interpreted to be a *designatio personum* and not to have its usual and technical meaning, as the clear meaning of the will, that the devise should take effect immediately, would otherwise be defeated, as *meno est heres viventis*". Clearly the testator had in mind the children of Lena Hedrick who, at her death, would become her heirs. We do not think the trust should fail merely because of a mistaken expression in a will prepared by one, who, according to the evidence, was not learned in the law.

What effect should be given to the use of the word "request", as applied to the division of the Blue Sulphur land. There is much confusion in the authorities on this question, and it is said that the modern trend is toward lessening the potency of precatory words. In 1 Harrison Wills and Administrations, 565, it is stated, "At one time precatory words were given almost as much potency as words of unqualified command, but under the modern decisions in many jurisdictions there must be something more than the mere use of precatory words to stamp upon an estate given a trust". It is further stated that the decisions in Virginia and West Virginia do not show the same degree of relaxation that operates in the decisions of other states, and he concludes with this statement: "If the language used by the testator constitutes mere words of suggestion and advice, it does not create a trust; if the words are intended as words of command, although ex-

pressed in the form of suggestion or advice, they create a trust". This, it must be admitted, does not tend to clarify the subject, but it does show, that, in the opinion of this distinguished author, this State and Virginia have not relaxed the rule relating to precatory words to the same extent that it may have been relaxed in other jurisdictions.

As bearing upon the rule established in Virginia and this State, we must depend largely on cases coming from Virginia. In *Harrison* v. *Harrison's Admx.*, 2 Gratt. 1, 44 Am. Dec. 365, a testator made the following bequest and devise: "In the utmost confidence in my wife, I leave to her all my worldly goods, to sell or keep for distribution amongst our dear children, as she may think proper. My whole estate real and personal are left in fee simple to her; only requesting her to make an equal distribution amongst our heirs; and desiring her to do for some of my faithful servants, whatever she may think will most conduce to their welfare, without regard to the interest of my heirs. Of course I wish first of all, that all my debts shall be paid." In that case it was held that the widow became vested, subject to the payment of debts, with the legal title to the whole of the estate; that she took the beneficial interest in the estate for her life; that the children of the marriage took a vested remainder in fee in the estate, commencing in possession at the widow's death or earlier at her election; that the widow might make advancements to the children at her discretion; and that she had the power to sell any part of the estate for the payment of debts, or for the convenient enjoyment, advancement or division of the estate. This was decided in 1845, and is, therefore, binding authority in this State.

In *Wilmoth* v. *Wilmoth,* 34 W. Va. 426, 12 S. E. 731, 734, in an opinion written by Judge Brannon, referring to the *Harrison* case, this Court said: "This was held very properly a precatory trust, not an absolute estate in the wife, because here were strong precatory words, and words clearly indicating that he did not mean to give her absolutely, but to give something for others; and these precatory words were so strong and repeated that nobody

could help seeing that the intent was not to give her absolutely, unfettered with a trust. The intent clearly manifested itself on the face of the will. Intent is the polar star in construing will. Adjudged cases count little; for, though wills are innumerable, no two are just alike. We are to hold the will up by its four corners before us, read it all, and see what the predominant idea of the testator was, and that ought to and must prevail against all doubtful or conflicting provisions which might of themselves defeat it".

In *Seefried* v. *Clark*, 113 Va. 365, 74 S. E. 204, 206, a testator appointed her husband her executor, and by the second clause of her will devised and bequeathed him, his heirs, administrators and assigns all of her estate, real and personal, "with one simple request, that the said estate be divided with my children, or its equivalents, as his better judgment may direct". The husband conveyed the greater portion of the real estate to one of the daughters of testatrix and nothing to the other children. After his death, this deed was assailed, on the ground that the will of the mother created a trust for the equal benefit of all of the children, and that the deed made by the father was a violation of this trust. It was held that a trust was created and that the word "simple" in the clause quoted means direct, clear; and the term "as his better judgment may direct" does not confer upon the husband an arbitrary discretion with respect to the division of the testatrix' estate; that a trust was created by her will for the equal benefit of all her children, and hence the deed from the husband to the daughter was null and void. The appellant in the case at bar attempts to minimize the force of this opinion by suggesting that the fact that the husband was appointed as executor under the will placed him in a fiduciary capacity, and made it easier to uphold a trust as against him in such capacity. We do not have the record of that case before us, but by the second clause of the will, in direct terms, she devised and bequeathed to him all of her estate. We are unable to see the force of the contention

that the first clause of the will appointing him executor distinguishes the case from the general rule.

One of the leading cases on this question is that of *Colton* v. *Colton,* 127 U. S. 300, 8 S. Ct. 1164, 32 L. ed. 138. In that case Colton left a will which contained the following provision: "I give and bequeath to my said wife EMC all of the estate, real and personal, of which I shall die seized, possessed or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gifts and provision for them as in her judgment will be best. I hereby appoint my said wife to be executrix of this my last will and testament, and desire that no bond be required of her for the performance of any of her duties as such executrix". That provision in the will was held to create a trust in favor of the mother and sister of the testator. Notwithstanding the discretion in the wife and executrix in that case, it was held that, "It is an error to suppose that the word 'request' necessarily imports an option to refuse and excludes the idea of obedience as correspondent duty. If a testator requests his executor to pay a given sum to a particular person, the legacy would be complete and recoverable. According to its context and manifest use, an expression of desire or wish will often be equivalent to a positive direction, where that is the evident purpose and meaning of the testator; as where a testator desired that all of his just debts, and those of a firm for which he was not liable, should be paid as soon as convenient after his decease, it was construed to operate as a legacy in favor of the creditors of the latter. * * * And in such a case as the present it would be but natural for the testator to suppose that a request which, in its terms, implied no alternative, addressed to his widow and principal legatee, would be understood and obeyed as strictly as though it were couched in the language of direction and command. In such a case, according to the phrase of Lord Loughborough in *Malim* v. *Keigley,* 2 Ves. Jr. 333, 529 'the mode is only civility' ".

In the cases we have discussed above there was an element of discretion vested in the person to whom the estates were devised and bequeathed, yet that discretion was not permitted to prevail over the testator's request. Here we do not have that situation. Reading the will alone there is a plain and unconditional request that the "land in Blue Sulphur District be divided between the Lena Hedrick heirs". There is, therefore, a stronger ground for giving effect to that request than existed in any of the cases we have cited and discussed.

This being the rule in Virginia and in this State, fortified by the decision of the highest court of the land in the *Colton* case, we find it difficult to escape the conclusion that the request of the testator should be given the force necessary to create a trust in the land in Blue Sulphur District in favor of plaintiffs. Two recent Virginia cases bearing on this subject do not, in our opinion, depart from the established rule. *Farmers Bank* v. *Kinser*, 169 Ga. 69, 192 S. E. 745, merely held that a devise of certain property in fee simple "and to dispose of the same among the children as she may think best" did not create a trust. In *McKinsey* v. *Cullingsworth*, 175 Va. 411, 9 S. E. 2d 315, where the testator stated in his will, "I want you to have my home and everything and you take care of Lula the best you can" did not create a precatory trust in favor of Lula.

As we understand the position of the appellant, he does not contend that the declarations of the testator, under ordinary circumstances, can be heard to vary or change the provisions of a will, but he does contend that such declarations may be brought to the aid of an ambiguous will, not to vary or change its provisions, but to clarify its meaning, especially if the ambiguity be latent, and cites *Coffman* v. *Coffman's Admr.; Claiborne* v. *Wilson; McCabe* v. *Cary's Ex'r.*, 135 Va. 428, 116 S. E. 485; *Arvin* v. *Smith's Ex'rs.*, 142 Va. 680, 128 S. E. 252; 68 C. J. 1005; and *Sands* v. *Sands*, 122 W. Va. 697, 12 S. E. 2d 918, in support of his contention. This may all be true, but we do not think the request contained in the will is

ambiguous. The testimony properly admitted to clarify the ambiguous part of the will cannot, in our opinion, be considered, in determining the meaning of the plain and unambiguous request made by the testator.

Another contention of the appellant is that the declarations of the testator established by the testimony were so close to, and such an integral part of the actual execution of the will, as to be admissible as part of the *res gestae*. It must be conceded that there is some authority for this proposition. A number of cases are cited wherein reference is made to the declarations of the testator as part of the *res gestae*. So far as we know, no such principle has ever found lodgment in this State or Virginia, and we hesitate to adopt it. Too many wills are executed under circumstances where it would be inadvisable to give force to spontaneous expressions of a testator. We think it safer to adhere to the rule that when a testator, in possession of his faculties, by a written will prepared by himself, or by another at his request, disposes of his property, such action should bar consideration of oral expressions at variance therewith, made upon impulse, such as is usually made the basis of the application of the *res gestae* theory. We think it would be a dangerous innovation to recognize the *res gestae* theory argued for by the appellant.

We do not think this is a case where laches should be employed to bar relief. There has been no change in the situation which would warrant us in holding that plaintiffs are barred of relief by lapse of time. True, some five and a half years have passed, during which the defendant was allowed to retain possession of this land and make some improvements thereon. The lower court probably thought he had been repaid for such improvements by the use of the land during that period, and no rents were charged against him. The evidence is that this suit was instituted shortly after the defendant sold the timber and that this was the act of the defendant which convinced plaintiffs that their supposed rights

were not to be recognized, and thereupon they sued. We do not think laches bars them.

The decree of the Circuit Court of Greenbrier County is affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting:

We must not lose sight of the fact that in dealing with the words "it is my request" we are not considering language usually made use of in creating trusts and that in this instance we are dealing with a will which contains only one sentence prepared by a deputy sheriff at the testator's request upon the day of his death. In that one sentence there are two latent ambiguities both of which are in the clause thought by the majority to create a trust, the one as to the testator's meaning in referring to the heirs of a living person, and the other by his referring to the "home place", there being two dwellings to either of which that description might relate. These ambiguities make it impossible to determine from the face of the will either the subject or the object of the provision in question. Extrinsic evidence is required, therefore, to establish a trust. Furthermore, we are dealing with a precatory provision which is predicated upon the "request" of a testator. With the realization that this State, and Virginia until recently, have trended toward the English rule which upholds precatory provisions as trusts, nevertheless, a very clear weight of authority is to the effect that the word "request" is not to be taken as directive but merely as suggestive. 49 A. L. R. 10 at page 69, 70 A. L. R. 321, page 326, 107 A. L. R. 896, page 919.

I do not agree that the word "request" as used by the testator is unambiguous, since the majority is ascribing to it a meaning against the clear weight of authority. However, I do not believe the major difficulty we are here confronted with can be limited to that one clause. I think the real inconsistency lies in the fact that the

testator, after plainly devising all of his land to his brother, followed with the "request" as against the interests of the "first taker", who is the preferred object of his bounty.

Of course, oral testimony is admitted for the purpose of establishing circumstances surrounding the testator at the time his will was executed, and also for the purpose of showing a latent ambiguity and clarifying the meaning of the testator when such ambiguity exists. It strikes me that under certain circumstances words with as elastic a meaning as the word "request", judged, of course, by the context, which in this instance involves two ambiguities, would be looked upon as of doubtful meaning even under the English rule relating to precatory trusts. I do not believe that this would be enlarging the scope of the so-called "oral" will in the least, and it would avoid, to my mind, the practical inconsistency of admitting oral proof in explanation of two ambiguities in a seven-line will, and excluding testimony to explain the meaning the testator meant to convey by the word "request", the uncontradicted testimony in this record showing beyond peradventure that he did not mean to limit the power of disposition of his brother, C. F. Hedrick, but did intend to devise to him an estate in fee simple.

I concede that the question here involves secondarily the question of whether West Virginia favors a distinct and independent principle, or whether this State is willing to correlate our legal principles with those of other jurisdictions.